<u>Theodore Scott v. State of Maryland</u>, No. 91, September Term, 2016

**PROHIBITION ON DOUBLE JEOPARDY – PLEA OF *AUTREFOIS ACQUIT* – DOCTRINE OF COLLATERAL ESTOPPEL – FIFTH AMENDMENT – COMMON LAW – ENHANCED SENTENCES – PRIOR CONVICTIONS FOR CRIME OF VIOLENCE – RESENTENCING –** Court of Appeals held that, where appellate court vacates enhanced sentence due to insufficient evidence of required prior conviction, neither plea of *autrefois acquit* nor doctrine of collateral estoppel bars trial court from reimposing enhanced sentence based on same prior conviction. Court concluded that, where appellate court vacates sentence to which another sentence is consecutive and remands for resentencing without vacating consecutive sentence, trial court cannot make new sentence concurrent with non-vacated consecutive sentence.

IN THE COURT OF APPEALS

OF MARYLAND

No. 91

September Term, 2016

_____

THEODORE SCOTT

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: July 10, 2017

Both the Fifth Amendment to the Constitution of the United States and the common law of Maryland provide for a prohibition on double jeopardy. A plea of *autrefois acquit* is a common-law plea in which a defendant alleges to have been previously acquitted of an offense, and, as a result, that he or she may not be tried again. See Scriber v. State, 437 Md. 399, 403, 86 A.3d 1260, 1262 (2014).[1] Under a valid plea of *autrefois acquit*, the State cannot reprosecute a defendant after an acquittal. The doctrine of collateral estoppel is a common-law doctrine that, in a criminal case, prohibits "the relitigation of an issue of ultimate fact that has been decided in a defendant's favor." Scriber, 437 Md. at 403, 86 A.3d at 1262. Under the doctrine of collateral estoppel, the State cannot relitigate an issue of fact that has been decided in a defendant's favor.

This case requires us to determine whether a plea of *autrefois acquit* or the doctrine of collateral estoppel bars a trial court from imposing at resentencing an enhanced sentence based on a prior conviction for a crime of violence after the trial court has previously imposed an enhanced sentence based on the same prior conviction, and an appellate court vacated the enhanced sentence due to insufficient evidence of the prior conviction.

In the Circuit Court for Prince George's County ("the circuit court"), a jury found Theodore Scott ("Scott"), Petitioner, guilty of, among other crimes, attempted robbery with a dangerous weapon, use of a handgun in the commission of a crime of violence, and conspiracy to commit robbery with a dangerous weapon. The State contended that Scott

---

[1]"*Autrefois acquit*" means "previously acquitted." See *Autrefois Acquit*, Black's Law Dictionary (10th ed. 2014).

was subject to Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 14-101(d), which provided for an enhanced sentence for a defendant who was convicted of a third crime of violence after having been convicted of two crimes of violence.[2] At sentencing, the prosecutor offered certified copies of two prior convictions pertaining to Scott, a first-degree assault in Maryland and an aggravated assault in the District of Columbia, as well

---

[2]CR § 14-101(d) stated:

(1) Except as provided in subsection (g) of this section, on conviction for a third time of a crime of violence, a person shall be sentenced to imprisonment for the term allowed by law but not less than 25 years, if the person:

    (i) has been convicted of a crime of violence on two prior separate occasions:

        1. in which the second or succeeding crime is committed after there has been a charging document filed for the preceding occasion; and

        2. for which the convictions do not arise from a single incident; and

    (ii) has served at least one term of confinement in a correctional facility as a result of a conviction of a crime of violence.

(2) The court may not suspend all or part of the mandatory 25-year sentence required under this subsection.

(3) A person sentenced under this subsection is not eligible for parole except in accordance with the provisions of § 4-305 [(Parole)] of the Correctional Services Article.

In 2013, without making any substantive amendments, the General Assembly recodified CR § 14-101(d) as Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2013 Supp.) § 14-101(c). See 2013 Md. Laws 2321 (Vol. III, Ch. 156, S.B. 276).

In this case, CR § 14-101(d) was effective during the original sentencing proceeding, and the amended statute was effective during the resentencing proceeding. For consistency, we refer only to CR § 14-101(d).

as the statement of charges for the aggravated assault. The circuit court found that Scott had two prior convictions for crimes of violence, and imposed an enhanced sentence of twenty-five years of imprisonment, without the possibility of parole, for attempted robbery with a dangerous weapon. The circuit court imposed a sentence of ten years of imprisonment, with all but five years suspended, followed by five years of supervised probation, for use of a handgun in the commission of a crime of violence, consecutive to the sentence for attempted robbery with a dangerous weapon, and a sentence of ten years of imprisonment, with all but five years suspended, for conspiracy to commit robbery with a dangerous weapon, consecutive to the other two sentences.

The Court of Special Appeals vacated the twenty-five-year sentence for attempted robbery with a dangerous weapon and remanded for resentencing, concluding that the evidence was insufficient to support the circuit court's determination that the conviction for aggravated assault in the District of Columbia constituted a conviction for a crime of violence under CR § 14-101(a). The Court of Special Appeals did not vacate the sentences for use of a handgun in the commission of a crime of violence and conspiracy to commit robbery with a dangerous weapon, which the circuit court had imposed consecutively.

On remand, the State sought to have the circuit court reimpose the enhanced sentence for attempted robbery with a dangerous weapon. Scott opposed the State's attempt to seek an enhanced sentence, contending that the imposition of such a sentence would violate the prohibition on double jeopardy. At the resentencing proceeding, the circuit court admitted into evidence a transcript of Scott's guilty plea for aggravated assault in the District of Columbia, and again found that Scott had two prior convictions for crimes

- 3 -

of violence. The circuit court again sentenced Scott to twenty-five years of imprisonment for attempted robbery with a dangerous weapon.

Scott's counsel requested that the circuit court make the new sentence for attempted robbery with a dangerous weapon concurrent with the two existing sentences. The circuit court responded that it lacked the discretion to do so. As such, the circuit court reimposed the enhanced sentence for attempted robbery with a dangerous weapon, with the sentences for use of a handgun in the commission of a crime of violence and conspiracy to commit robbery with a dangerous weapon remaining ordered to be served consecutively.

Before us, Scott contends that the circuit court violated the principles of *autrefois acquit* and collateral estoppel by readjudicating the issue of whether he had the requisite prior convictions for an enhanced sentence. Additionally, Scott argues that the circuit court erred in concluding that it lacked the discretion to impose the new sentence for attempted robbery with a dangerous weapon to be concurrent with the two existing sentences.

An examination of the Supreme Court's and this Court's case law leads to the conclusion that, where an appellate court determines that the evidence was insufficient to establish a requisite prior conviction as a basis for an enhanced sentence and vacates the enhanced sentence, the appellate court's determination does not preclude a trial court from determining at resentencing that the same prior conviction satisfies the requirement for an enhanced sentence.

We hold that: (I) where an appellate court vacates an enhanced sentence due to insufficient evidence of a requisite prior conviction, neither the plea of *autrefois acquit* nor the doctrine of collateral estoppel bars a trial court from imposing an enhanced sentence at

resentencing based on the same prior conviction; and (II) where an appellate court vacates a sentence to which another sentence has been ordered to be consecutive and remands for resentencing without vacating the consecutive sentence, the trial court may not make the new sentence concurrent with the non-vacated consecutive sentence.

## BACKGROUND

### Charges and Trial

The State charged Scott with attempted robbery with a dangerous weapon, attempted robbery, first- and second-degree assault, use of a handgun in the commission of a crime of violence, wearing or carrying a handgun, and conspiracy to commit robbery with a dangerous weapon.

At trial, as a witness for the State, Detective Stephen Johnson of the Prince George's County Police Department testified that, on December 23, 2011, at approximately 8 p.m., he and another detective began surveilling the 7-Eleven at 2310 Varnum Street in Mount Rainier from an unmarked police vehicle in an adjacent parking lot. Shortly after 2 a.m. on December 24, 2011, two men walked to the side of the 7-Eleven, spoke to each other, and pulled ski masks over their heads. The taller of the two men pulled out a silver handgun, and the shorter man pulled out a black handgun. The men ran to the front of the 7-Eleven and pulled on the front door handles, but the front door was locked. The men pointed the handguns at the employees inside the 7-Eleven, but the employees did not unlock the front door. The shorter man ran toward the back of the 7-Eleven, and the taller man ran through the parking lot, turned onto Russell Avenue, and got into the front passenger seat of a vehicle whose engine was running. The detectives and other law

enforcement officers chased the vehicle until it ultimately crashed in the District of Columbia.

Detective Johnson provided a description of the shorter man to another detective. Later, Detective Johnson learned that a patrol unit had stopped someone who matched the shorter man's description at 2208 Queens Chapel Road, which is on the street that is directly behind the 7-Eleven. At trial, Detective Johnson identified Scott as the shorter man who had attempted to enter the 7-Eleven with a black handgun.

A jury found Scott guilty of all charges.[3]

## Original Sentencing Proceeding

After trial, but before the sentencing proceeding, the State filed a Notice of Enhanced Penalty (Crime of Violence), contending that Scott was subject to a mandatory minimum sentence of twenty-five years of imprisonment, without the possibility of parole, under CR § 14-101(d). According to the State, Scott had been convicted of two prior crimes of violence: first-degree assault in Maryland, and aggravated assault in the District of Columbia.[4] The District of Columbia conviction resulted from a guilty plea.

---

[3]Scott filed a Motion for Judgment Notwithstanding the Verdict, which the circuit court granted as to first-degree assault.

[4]DC Code § 22-404.1(a) (2017) provides that a person commits aggravated assault if:

(1) By any means, that person knowingly or purposely causes serious bodily injury to another person; or

(2) Under circumstances manifesting extreme indifference to human life, that person intentionally or knowingly engages in conduct which creates a grave risk of serious bodily injury to another person, and thereby causes serious bodily injury.

Scott filed a motion to strike the notice of enhanced penalties, contending that the conviction for aggravated assault in the District of Columbia did not constitute a conviction for a crime of violence under CR § 14-101(a). Specifically, Scott argued that the elements of aggravated assault under District of Columbia law were not the same as the elements of first-degree assault under Maryland law. Scott pointed out that, although first-degree assault is identified as a crime of violence under CR § 14-101(a)(19), CR § 14-101(a) does not include aggravated assault in its list of crimes of violence. Additionally, Scott maintained that CR § 14-101(a) does not provide that a conviction in another jurisdiction is to be considered a qualifying conviction if it is based on conduct that would have been a crime of violence if the defendant had committed it in Maryland. Scott did not dispute that he had been convicted of a separate first-degree assault offense in Maryland.

At the sentencing proceeding, after the State offered certified copies of Scott's prior convictions, the circuit court continued the sentencing proceeding to engage in additional research. When the sentencing proceeding resumed, the prosecutor argued that, contrary to Scott's position, a conviction in another jurisdiction is a qualifying prior conviction under CR § 14-101(d) if the conviction is based on conduct that would have been a crime of violence if the defendant had committed it in Maryland. To establish that the conviction for aggravated assault in the District of Columbia was based on conduct that would have been first-degree assault if Scott had committed the offense in Maryland, the prosecutor advised that the statement of charges from the District of Columbia indicated that Scott had stomped on a person's head until the person lost consciousness. The prosecutor argued that, by stomping a person into unconsciousness, Scott had caused serious physical injury,

and engaged in conduct that would have been first-degree assault if it had occurred in Maryland.

The circuit court determined that the conviction for aggravated assault in the District of Columbia constituted a conviction for a crime of violence under CR § 14-101(d). The circuit court sentenced Scott to: twenty-five years of imprisonment, without the possibility of parole, for attempted robbery with a dangerous weapon; ten years of imprisonment, with all but five years suspended, followed by five years of supervised probation, for use of a handgun in the commission of a crime of violence, consecutive to the sentence for attempted robbery with a dangerous weapon; and ten years of imprisonment, with all but five years suspended, for conspiracy to commit robbery with a dangerous weapon, consecutive to the other two sentences. The circuit court merged the remaining convictions for sentencing purposes.

**First Opinion of the Court of Special Appeals**

Scott noted an appeal. In an unreported opinion, the Court of Special Appeals affirmed the convictions, but vacated the sentence for attempted robbery with a dangerous weapon and remanded for resentencing. The Court of Special Appeals held that the State had failed to prove that the conviction for aggravated assault in the District of Columbia constituted a conviction for a crime of violence under CR § 14-101(d). The Court of Special Appeals concluded that the statement of charges for the aggravated assault did not constitute proof of the conduct that was the basis for the conviction because the facts given in support of the guilty plea may have been different from the facts in the statement of charges. The Court of Special Appeals determined that a remand for resentencing was

- 8 -

warranted, relying on Maryland Rule 8-604(d)(2), which states: "In a criminal case, if the appellate court reverses the judgment for error in the sentence or sentencing proceeding, the Court shall remand the case for resentencing."  The Court of Special Appeals's mandate stated, in pertinent part: "SENTENCE ON COUNT 1 [(ATTEMPTED ROBBERY WITH A DANGEROUS WEAPON)] VACATED AND THE CASE IS REMANDED FOR RESENTENCING.  ALL JUDGMENTS OTHERWISE AFFIRMED."

### Resentencing Proceeding

On remand, in a letter to Scott's counsel that was filed with the circuit court, the prosecutor advised that the State again intended to request an enhanced sentence, and attached the transcript of Scott's guilty plea proceeding in the District of Columbia.[5]

Scott filed a Response to Notice of Enhanced Penalties, contending that the conviction for aggravated assault in the District of Columbia did not constitute a conviction for a crime of violence under CR § 14-101(d) because the statement of facts at Scott's guilty plea proceeding did not establish that Scott intentionally caused injury to the victim. Scott also argued that the Double Jeopardy Clause and the prohibition on double jeopardy under the common law of Maryland barred the State from seeking an enhanced sentence on remand.

---

[5]The transcript of Scott's guilty plea proceeding in the District of Columbia reveals that the prosecutor provided the following facts in support of the guilty plea.  Scott picked a victim's jacket up off the ground, and told the victim to remove anything that he wanted from his jacket.  The victim refused to give up his jacket and a man named Calvin Mason started punching the victim.  Scott began punching the victim as well.  After the victim fell to the ground, both Scott and Mason stomped on the victim's face and body.  The victim lost consciousness and suffered bruising, subdural bleeding, and a fracture of the left orbital bone.

- 9 -

At the resentencing proceeding, the circuit court admitted into evidence the transcript of Scott's guilty plea proceeding in the District of Columbia, and determined that the conviction for aggravated assault was the equivalent of a conviction for first-degree assault under CR § 14-101(a), *i.e.*, a crime of violence.

As to whether the enhanced sentence for attempted robbery with a dangerous weapon would be imposed consecutive to or concurrent with the two existing sentences, the following exchange occurred:

> [PROSECUTOR]: Your Honor, just before you hear from [Scott], Counts 5 [(use of a handgun in the commission of a crime of violence)] and 7 [(conspiracy to commit robbery with a dangerous weapon)] can't -- those aren't here for re-sentencing, so those cannot be changed. I think that the only thing that you can sentence on is the [twenty-five] mandatory without parole[, which was for Count 1 (attempted robbery with a dangerous weapon)].
>      The reason I brought the Count 5 up was because that was, in fact, consecutive. We're not here to change that sentence. I just wanted to make sure that was on the record because those two counts -- those two sentences that the Court issued remain the same, so the only thing that we're here for is the Count 1.
>
> [SCOTT'S COUNSEL]: The Court is here sentencing -- the Court can make Count 1 consecutive [to] or concurrent [with] the already existing sentences.
>
> [PROSECUTOR]: But those sentences, Count 5 actually says --
>
> THE COURT: The problem is, is that I didn't make Count 1 consecutive to the other sentences. I made the gun charge [Count 5] consecutive. And so if I did have the discretion to make this concurrent, that would change, in effect, the sentence on the other counts, which are not before the Court.
>
> [SCOTT'S COUNSEL]: At the moment they're consecutive to a sentence that doesn't exist. So the Court does have the power to make Count 1, which you're sentencing on, concurrent [with] all other sentences which already exist in this case, and that's what we ask the Court to do.
>
> THE COURT: All right. Well, I disagree with you, [Scott's counsel], but I'll

hear from [] Scott as to how he feels or what he wants to say at this point.

[SCOTT'S COUNSEL]: Given the Court's rulings, the fact that the Court is ruling it has essentially no discretion in the sentence it's going to impose, [] Scott has nothing to add.

Following this exchange, the circuit court reimposed the original enhanced sentence for attempted robbery with a dangerous weapon—twenty-five years of imprisonment without the possibility of parole. The circuit court noted that the other "sentence[s] remain[ed] the same."

### Second Opinion of the Court of Special Appeals

Scott noted an appeal. The Court of Special Appeals affirmed the circuit court's judgment, holding that,

> when a mandatory enhanced sentence for a third crime of violence is vacated on appeal because the evidence was legally insufficient to support a finding that one of the prior convictions was for a crime of violence, double jeopardy [does not] bar[] the State from introducing new evidence at resentencing on remand to show that the same prior conviction was for a crime of violence.

Scott v. State, 230 Md. App. 411, 450, 416, 148 A.3d 72, 95, 75 (2016). The Court acknowledged that its "holding [wa]s at odds with" Bowman v. State, 314 Md. 725, 740, 552 A.2d 1303, 1310 (1989), in which this Court held that the State could not seek an enhanced sentence on remand where an enhanced sentence was vacated due to insufficient evidence of qualifying prior convictions. Scott, 230 Md. App. at 416, 148 A.3d at 75. The Court of Special Appeals concluded that "*Bowman* was based solely on an analysis of federal constitutional double jeopardy law that the [] Supreme Court has since rejected" in Monge v. California, 524 U.S. 721, 734 (1998), in which the Court held "that the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital

sentencing context." <u>Scott</u>, 230 Md. App. at 416, 430, 148 A.3d at 75, 83.

The Court of Special Appeals explained that, in <u>Monge</u>, the Supreme Court extended the holding of <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 226-27 (1998), to resentencing proceedings. <u>See</u> <u>Scott</u>, 230 Md. App. at 426, 148 A.3d at 81. The Court of Special Appeals noted that, in <u>Almendarez-Torres</u>, 523 U.S. at 226-27, the Supreme Court held that the Constitution did not require the government to charge a defendant with being subject to an enhanced sentence due to a qualifying prior conviction because the use of a prior conviction for sentence enhancement purposes is not the same as establishing an element of an offense. <u>See</u> <u>Scott</u>, 230 Md. App. at 425, 148 A.3d at 80-81. The Court of Special Appeals concluded that, in light of <u>Monge</u>, "a failure of proof on sentencing is [] not an acquittal (or the functional equivalent of an acquittal) of the sentence that was imposed or any greater sentence under the principle of *autrefois acquit*." <u>Scott</u>, 230 Md. App. at 435-36, 148 A.3d at 86-87. Before the Court of Special Appeals, Scott contended that, in the case of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court indicated that it would someday overrule <u>Almendarez-Torres</u> and <u>Monge</u>. <u>See</u> <u>Scott</u>, 230 Md. App. at 428 n.4, 148 A.3d at 82 n.4. In <u>Apprendi</u>, 530 U.S. at 490, 489, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt[,]" and stated that "it is arguable that *Almendarez-Torres* was incorrectly decided[.]" (Footnote omitted). In response to Scott's contention concerning <u>Apprendi</u>, the Court of Special Appeals stated: "Quite apart from the fact that we must take Supreme Court law as it is, not as it might become, we note that the *Apprendi*

Court acknowledged the continued validity of *Monge* and *Almendarez-Torres* as applied to subsequent offender sentencing statutes." <u>Scott</u>, 230 Md. App. at 428 n.4, 148 A.3d at 82 n.4 (citing <u>Apprendi</u>, 530 U.S. at 488 n.14).

Concerning the doctrine of collateral estoppel, the Court of Special Appeals concluded that the doctrine "applies when there has been a factual finding favorable to the defendant that is central to his [or her] criminal liability for an offense[,]" and that "[t]he doctrine has never been extended to apply to sentencing." <u>Scott</u>, 230 Md. App. at 439, 148 A.3d at 89. The Court of Special Appeals explained that, even if the doctrine of collateral estoppel applied to sentencing, the circuit court had not made a final adjudication, as a matter of fact, that the aggravated assault in the District of Columbia was not a crime of violence. <u>See</u> <u>id.</u> at 439, 148 A.3d at 89.

The Court of Special Appeals held that Scott had failed to preserve for appellate review his contention that the circuit court erred in not making the two existing sentences concurrent with the new sentence for attempted robbery with a dangerous weapon. <u>See</u> <u>id.</u> at 444-46, 148 A.3d at 92-93. Specifically, the Court of Special Appeals observed that, in the circuit court, Scott had asked that the new sentence for attempted robbery with a dangerous weapon be imposed concurrent with the two existing sentences, as opposed to having requested that the two existing sentences be made concurrent with the new sentence. <u>See</u> <u>id.</u> at 444-46, 148 A.3d at 92-93. The Court of Special Appeals concluded that the propriety of the two existing sentences having been imposed consecutively was not before the circuit court on remand because those sentences had not been vacated. <u>See</u> <u>id.</u> at 450,

148 A.3d at 95.[6]

## Petition for a Writ of *Certiorari*

Scott petitioned for a writ of *certiorari*, which this Court granted, see Scott v. State, 451 Md. 579, 155 A.3d 434 (2017), raising the following four issues:

> 1. Where the State fails to prove the existence of a prior conviction for purposes of imposing a mandatory sentence pursuant to [CR] § 14-101, is the State barred from attempting to prove the prior conviction on remand for resentencing under the Double Jeopardy Clause of the Fifth Amendment and/or the Maryland common law prohibition against double jeopardy?
>
> 2. If the answer to Question 1 is yes, did the Court of Special Appeals err in holding that the State was not barred from attempting to prove the existence of a prior conviction of [Scott] on remand for resentencing?
>
> 3. Where [Scott] was originally sentenced to a mandatory term of twenty-five years without parole on Count 1 [(attempted robbery with a dangerous weapon)], to ten years with all but five years suspended on Count 5 [(use of a handgun in the commission of a crime of violence)], consecutive to Count 1, and to ten years with all but five years suspended on Count 7 [(conspiracy to commit robbery with a dangerous weapon)], consecutive to Count 5, and the Court of Special Appeals vacated Count 1 and remanded for resentencing, did the [circuit] court err at resentencing in concluding that it did not have discretion to make the sentence on Count 1 run concurrent with the sentences on Count 5 and Count 7 (without changing the consecutive nature of Counts 5 and 7 to each other)?
>
> 4. Did the Court of Special Appeals err in holding that the issue in Question 3 was not preserved?

---

[6]The Court of Special Appeals also held that the circuit court did not exceed the scope of the remand by receiving additional evidence of the conviction for aggravated assault in the District of Columbia, and that the additional evidence was sufficient to prove that the aggravated assault in the District of Columbia constituted a crime of violence under CR § 14-101(a). See Scott, 230 Md. App. at 441, 443, 148 A.3d at 90, 91. Scott does not raise either of these issues before us.

- 14 -

# DISCUSSION

## I. Double Jeopardy

## The Parties' Contentions

Scott contends that the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States and the prohibition on double jeopardy under the common law of Maryland barred the State on remand from attempting to prove that his conviction for aggravated assault in the District of Columbia constituted a crime of violence under CR § 14-101(a). Scott argues that the plea of *autrefois acquit* applies to the determination of whether the State has established a qualifying prior conviction for purposes of an enhanced sentence. Scott asserts that <u>Bowman</u>, 314 Md. at 740, 552 A.2d at 1310—in which this Court held that the prohibition on double jeopardy barred the State from seeking an enhanced sentence on remand after an enhanced sentence was vacated on appeal due to insufficient evidence of qualifying prior convictions—remains good law. Scott maintains that this Court's holding in <u>Bowman</u> was based on both the Double Jeopardy Clause and the prohibition on double jeopardy under the common law of Maryland, which this Court may interpret to grant more protection than that given under federal law. Scott asserts that <u>Monge</u>, 524 U.S. at 734—in which the Supreme Court held that, at resentencing in a noncapital case, the Double Jeopardy Clause does not bar a readjudication, for purposes of an enhanced sentence, of the existence of a prior conviction—is no longer good law in light of <u>Apprendi</u>, 530 U.S. at 490. Specifically, Scott maintains that, as a result of the Supreme Court's holding in <u>Apprendi</u>, "the holding in *Monge* hangs only by the thread of an exception."

- 15 -

Scott argues that the constitutional prohibition on double jeopardy applies to the determination of a requisite prior conviction for an enhanced sentence because the existence of the prior conviction is essential to justifying the punishment in question. Scott points out that, if the circuit court had found that the State failed to meet the burden of establishing a necessary prior conviction, the State would have been unable to note an appeal of that determination in an attempt to secure a new sentencing proceeding. Scott asserts that the holding of the Court of Special Appeals in this case essentially gives the State unlimited attempts to secure an enhanced sentence.

Scott maintains that the doctrine of collateral estoppel bars the State from proving his prior conviction on remand because establishing the existence of a qualifying prior conviction involves a factual determination. According to Scott, the Court of Special Appeals made such a determination in his favor by concluding in the first appeal that the evidence was insufficient to support the circuit court's finding that he had two prior convictions for crimes of violence.

The State responds that the constitutional prohibition on double jeopardy does not extend to resentencing proceedings involving a sentencing enhancement under CR § 14-101(d). The State contends that the Supreme Court's holding in <u>Monge</u>, 524 U.S. at 734—*i.e.*, that, at resentencing in a noncapital case, the Double Jeopardy Clause does not bar a trial court from readjudicating whether a defendant has a prior conviction—unequivocally precludes application of the prohibition against double jeopardy to resentencing, and is dispositive here. The State points out that the prohibition against double jeopardy applies where there has been an acquittal based on insufficient evidence, but does not apply where

a reversal is based on an erroneous legal decision by a trial court. The State argues that this Court's holding in Bowman has been effectively superseded by the Supreme Court's holdings in Monge and Almendarez-Torres. The State asserts that, more recently, in Twigg v. State, 447 Md. 1, 133 A.3d 1125 (2016), this Court essentially followed Monge by holding that, where a sentence for a lesser-included crime was vacated, resentencing for a greater-inclusive crime would not violate the Double Jeopardy Clause. The State maintains that, even if Bowman remains good law, it is not applicable here because, in Bowman, this Court concluded there was no evidence, either admissible or not, that was sufficient to support the enhanced sentence—whereas, in this case, the Court of Special Appeals held only that the statement of charges did not provide the factual basis that was used for Scott's guilty plea to aggravated assault in the District of Columbia.

The State contends that the plea of *autrefois acquit* applies to a determination as to whether a defendant has previously been acquitted of a crime. The State argues that the plea of *autrefois acquit* does not apply to the reimposition of an enhanced sentence on remand because this is a legal determination that is made by a judge. The State asserts that the doctrine of collateral estoppel does not apply in this case because the circuit court did not find, as a matter of fact, that the conviction for aggravated assault in the District of Columbia was not a conviction for a crime of violence.

### Standard of Review

An appellate court reviews without deference a trial court's conclusion as to whether the prohibition on double jeopardy applies. See Giddins v. State, 393 Md. 1, 15, 899 A.2d 139, 147 (2006).

- 17 -

## The Prohibition on Double Jeopardy

The Double Jeopardy Clause states: "No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Although the Constitution of Maryland does not contain a counterpart to the Double Jeopardy Clause, the common law of Maryland provides for a prohibition on double jeopardy. See Scriber, 437 Md. at 408, 86 A.3d at 1265. Under the prohibition on double jeopardy, a court cannot subject a defendant to multiple trials and sentences for the same offense. See id. at 408, 86 A.3d at 1265.

## The Plea of *Autrefois Acquit*

Generally, the Double Jeopardy Clause does not bar a second prosecution for the same offense after an appellate court reverses a conviction. See Winder v. State, 362 Md. 275, 324, 765 A.2d 97, 124 (2001). An exception to this general rule applies where the ground for the reversal of a conviction is insufficiency of the evidence. See id. at 325, 765 A.2d at 124.

The Supreme Court created this exception in Burks v. United States, 437 U.S. 1, 18 (1978), in which the Court held that "the Double Jeopardy Clause precludes a second trial once [a] reviewing court has found the evidence legally insufficient[.]" In Burks, id. at 3-4, a Court of Appeals reversed a conviction on the ground that the evidence was insufficient, and remanded to a District Court with instructions to determine whether to issue a directed verdict of acquittal or order a new trial. The Supreme Court concluded that the decision of the Court of Appeals functioned as an acquittal because the decision "represented a resolution, correct or not, of some or all of the factual elements of the offense

charged." Id. at 10 (brackets, citation, and internal quotation marks omitted). The Supreme Court concluded that the Court of Appeals erred in remanding because, if the District Court had determined that the evidence was insufficient, the District Court would have entered a judgment of acquittal, and the defendant could not have been retried; and "it should make no difference that the reviewing court, rather than the trial court, determined the evidence to be insufficient[.]" Id. at 10-11 (citation and emphasis omitted). The Supreme Court explained that its decision furthered the Double Jeopardy Clause's purpose, which is to deny "the [government] another opportunity to supply evidence [that] it failed to muster in the first proceeding"—i.e., "to make repeated attempts to convict an individual for an alleged offense[.]" Id. at 11 (citation and internal quotation marks omitted). The Court noted that its holding did not undermine the general rule that the Double Jeopardy Clause does not bar a second prosecution for the same offense after a reviewing court reverses a conviction; "reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case." Id. at 15.

In United States v. DiFrancesco, 449 U.S. 117, 139, 118-21 (1980), the Supreme Court held that the Double Jeopardy Clause was not violated by a statute that authorized an enhanced sentence for "dangerous special offenders" and authorized the United States to appeal from an imposition of a sentence under certain circumstances in cases in which the United States had sought the enhanced sentence. In DiFrancesco, id. at 122, a District Court sentenced a defendant to concurrent terms of imprisonment as a dangerous special offender. The defendant appealed from the convictions, and the United States appealed

from the sentences.  See id. at 123.  A Court of Appeals affirmed the convictions, but dismissed the United States's appeal on double jeopardy grounds.  See id.  The Supreme Court reversed and remanded.  See id. at 143.

The Court began its analysis by explaining: "Where a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended."  Id. at 132 (brackets, citation, and internal quotation marks omitted).  The Court explained that the United States's ability to appeal from a sentence did not necessarily violate the Double Jeopardy Clause "just because its success might deprive [a defendant] of the benefit of a more lenient sentence."  Id.  The Court concluded that a sentence lacks "constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal[,]" and observed that the plea of *autrefois acquit* was a "protection[] against retrial" rather than resentencing.  Id. at 132, 133.  The Court explained that the Double Jeopardy Clause's purpose—to avoid "repeated attempts to convict"—has "no significant application" to the United States's ability to appeal from a sentence, as such an appeal "does not involve a retrial or approximate the ordeal of a trial on the basic issue of guilt or innocence."  Id. at 136.  The Court rejected the idea that an imposition of a "sentence is an 'implied acquittal' of any greater sentence."  Id. at 133 (citation omitted).  The Court also explained that "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of [the defendant's] punishment will turn out to be."  Id. at 137.

In Bullington v. Missouri, 451 U.S. 430, 444-45, 432 (1981), the Supreme Court held that the Double Jeopardy Clause bars a second capital sentencing proceeding at which

the government must prove certain elements before the death penalty may be imposed. In Bullington, id. at 435-36, the State of Missouri sought the death penalty, but a jury sentenced the defendant to life imprisonment without the possibility of parole. The defendant moved for a new trial, which the trial court granted on the ground that the Supreme Court had struck down Missouri's laws allowing women to be automatically excused from jury duty. See id. at 436. The State of Missouri filed a notice of intent to seek the death penalty again, and the defendant moved to strike the notice on the ground that the Double Jeopardy Clause barred the State from seeking the death penalty again because the jury had not sentenced the defendant to death. See id. at 436. The trial court agreed with the defendant and ruled that the State could not seek the death penalty again; the Supreme Court of Missouri ruled that the State could seek the death penalty again; and the Supreme Court of the United States reversed and remanded. See id. at 436-37, 446-47.

The Court began its analysis by acknowledging:

> The imposition of a particular sentence usually is not regarded as an "acquittal" of any more severe sentence that could have been imposed. The Court generally has concluded, therefore, that the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having [the defendant's] original conviction set aside.

Id. at 438 (citations omitted). The Court distinguished Bullington, the case at hand, from previous cases in which it had held that the Double Jeopardy Clause did not apply to sentencing on the ground that, in Bullington, the sentencing proceeding constituted "a trial on the issue of punishment" because, rather than having "unbounded discretion to select an appropriate punishment from a wide range authorized by statute[,]" the jury had two

alternatives (death or life imprisonment without the possibility of parole); additionally, the jury could not impose the death penalty unless the State met its burden of proving certain facts beyond a reasonable doubt. Id. at 438. The Court explained that Bullington was subject to Burks's "insufficient evidence" exception to the general rule that the government may prosecute a defendant a second time after an appellate court reverses a conviction. See Bullington, 451 U.S. at 444-45.

In Lockhart v. Nelson, 488 U.S. 33, 34 (1988), the Supreme Court held that the Double Jeopardy Clause did not bar a retrial where an appellate court reversed a conviction on the ground that the trial court erred in admitting certain evidence, and determined that the remaining evidence was insufficient. In Nelson, id. at 34-35, the State of Arkansas sought to have a defendant sentenced under a habitual criminal statute, which provided for an enhanced sentence upon a fifth or subsequent conviction for a felony. At a sentencing proceeding, the prosecutor offered certified copies of the defendant's four prior felony convictions; unbeknownst to the prosecutor and the defendant's counsel, the Governor had pardoned the defendant as to one of the convictions. See id. at 36. A jury found that the State had established four qualifying prior convictions, and imposed an enhanced sentence. See id. The defendant petitioned for a writ of habeas corpus, contending that the enhanced sentence was invalid because of the pardon. See id. at 37. A District Court agreed, and vacated the enhanced sentence. See id. The State of Arkansas sought to have the defendant resentenced under the habitual criminal statute, relying on a prior conviction that had not been raised at the original sentencing proceeding. See id. The defendant argued that the Double Jeopardy Clause barred such a resentencing. See id. The District Court agreed; a

- 22 -

Court of Appeals affirmed; and the Supreme Court reversed.  See id. at 37, 33.

The Court explained that Burks dictated the result because

> *Burks* was careful to point out that a reversal based solely on evidentiary
> insufficiency has fundamentally different implications, for double jeopardy
> purposes, than a reversal based on such ordinary "trial errors" as the
> "incorrect receipt or rejection of evidence."  437 U.S.[] at 14-16[].  While
> the former is in effect a finding "that the government has failed to prove its
> case" against the defendant, the latter "implies nothing with respect to the
> guilt or innocence of the defendant," but is simply "a determination that
> [the defendant] has been convicted through a judicial process which is
> defective in some fundamental respect."  *Id.* at 15[.]

Nelson, 488 U.S. at 40 (emphasis omitted).

The Court concluded that the trial court's error in admitting evidence of the

conviction that was the subject of a pardon constituted trial error, as opposed to an issue of

insufficient evidence.  See id.  The Court pointed out that, although the trial court's

admission of evidence of the conviction was error, the evidence—comprised of proof of

four prior convictions—was sufficient to support the enhanced sentence.  See id.  The Court

concluded that the Double Jeopardy Clause was not aimed at circumstances like the ones

in Nelson because, if the defendant had proven at the original sentencing proceeding that

one of the four prior convictions was the subject of a pardon, the trial court presumably

would have given the State of Arkansas the opportunity to offer evidence of another prior

conviction.  See id. at 42.

In Bowman, 314 Md. at 740, 552 A.2d at 1310, this Court distinguished the Supreme

Court's holding in Nelson and held that the State could not seek an enhanced sentence on

remand where this Court vacated an enhanced sentence due to insufficient evidence of

qualifying prior convictions.  In Bowman, 314 Md. at 728, 552 A.2d at 1304, at a

sentencing proceeding, a prosecutor alleged, and the trial court found, that the defendant had two prior convictions for robbery with a deadly weapon. The trial court imposed an enhanced sentence under CR § 14-101(d)'s predecessor, Md. Code Ann., Art. 27 (1957, 1987 Repl. Vol.) § 643B(c), and the Court of Special Appeals affirmed. See Bowman, 314 Md. at 728-29, 552 A.2d at 1304. The defendant filed a motion for reconsideration, pointing out that he had only one prior conviction for robbery with a deadly weapon; on a separate date, the defendant had been convicted of robbery and assault with a deadly weapon. See id. at 729, 552 A.2d at 1304. The Court of Special Appeals issued a new opinion in which it affirmed again, reasoning that the prior convictions for robbery and assault with a deadly weapon were based on conduct that constituted robbery with a deadly weapon. See id. at 729, 731-32, 552 A.2d at 1304, 1305-06. This Court reversed the judgment of the Court of Special Appeals insofar as it affirmed the enhanced sentence, and remanded for resentencing. See id. at 741, 552 A.2d at 1310.

This Court determined that the evidence was insufficient to support a determination that the defendant had two prior convictions for crimes of violence because the record established only that the defendant had been convicted of one crime of violence (robbery with a deadly weapon). See id. at 733, 552 A.2d at 1306. This Court observed that the only evidence of prior convictions for crimes of violence were the records of the defendant's convictions for robbery with a deadly weapon, robbery, and assault with a deadly weapon. See id. at 733, 552 A.2d at 1306. This Court concluded that the Court of Special Appeals erred in inferring that the defendant had committed a second robbery with a deadly weapon based on the circumstance that the defendant had been convicted of

- 24 -

robbery and assault with a deadly weapon. See id. at 733, 552 A.2d at 1306-07.

This Court ordered that, on remand, the State would be prohibited from again seeking an enhanced sentence—whether on the theory that the convictions for robbery and assault with a deadly weapon had been based on conduct that constituted robbery with a deadly weapon, or on the basis of another prior conviction that had not been raised at the original sentencing proceeding. See id. at 740, 552 A.2d at 1310. This Court distinguished Nelson, 488 U.S. 33, on the ground that, in Nelson, the trial court erroneously admitted evidence that was sufficient to prove that the defendant was subject to an enhanced sentence; by contrast, in Bowman, the trial court "simply completely misinterpreted the evidence[,]" and there was never evidence, whether erroneously admitted or not, that was sufficient to prove that the defendant was subject to an enhanced sentence. Bowman, 314 Md. at 740, 552 A.2d at 1310. This Court concluded that "it [wa]s evident from *Nelson* that the *Burks'* exception to the general rule is applicable"; in other words, this Court applied Burks's "insufficient evidence" exception to the general rule that the government may prosecute a defendant a second time after an appellate court reverses a conviction. Bowman, 314 Md. at 740, 552 A.2d at 1310.

In Almendarez-Torres, 523 U.S. at 226, 235, the Supreme Court held that the enhanced penalty provision of a statute making it a crime for a deported person to return to the United States authorized an enhanced sentence, and, as such, did not create a separate crime that the government was required to independently charge. The Court concluded that neither the statute nor the Constitution required the government to specifically charge a person with being subject to the enhanced penalty provision. See id. at 226-27. In

- 25 -

Almendarez-Torres, id. at 227, a defendant pled guilty to returning to the United States after having been deported due to three convictions for aggravated felonies. At the sentencing proceeding, the defendant contended that the trial court could not sentence him to more than two years of imprisonment because the indictment had not mentioned the convictions for aggravated felonies, which, the defendant argued, constituted elements of a crime. See id. The District Court disagreed and sentenced the defendant to more than two years of imprisonment; a Court of Appeals affirmed; and the Supreme Court did the same. See id. at 227, 248.

As a matter of statutory interpretation, the Court concluded that Congress intended for the subsection in question to be a sentencing provision, not a definition of a separate crime; the Court noted that "prior commission of a serious crime[ ]is as typical a sentencing factor as one might imagine." See id. at 235, 230. Next, the Court rejected the defendant's contention that the doctrine of constitutional doubt required the Court to interpret the subsection as a definition of a separate crime. See id. at 237-38. The Court explained that, under the doctrine of constitutional doubt, if fairly possible, a court interprets a statute in a way that avoids not only the conclusion that the statute is unconstitutional, but also doubts about the statute's constitutionality. See id. at 237. The Court concluded that the doctrine of constitutional doubt did not apply in Almendarez-Torres because the canons of statutory interpretation weighed heavily in favor of concluding that the subsection was a penalty provision, not a definition of a separate crime; alternatively, even if the defendant's interpretation of the subsection were fairly possible, "the constitutional questions [that] he raises, while requiring discussion, simply do not lead us to doubt gravely that Congress

may authorize courts to impose longer sentences upon recidivists who commit a particular crime." Id. at 238 (emphasis omitted). The Court stated that, if it adopted "a rule that any significant increase in a statutory maximum sentence would trigger a constitutional 'elements' requirement[,]" the Court would "find it difficult to reconcile any such rule with [the Court's] precedent holding that the sentencing-related circumstances of recidivism are not part of the definition of the offense for double jeopardy purposes." Id. at 247 (citation omitted).

In Monge, 524 U.S. at 734, the Supreme Court held that "the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context." In Monge, id. at 724-25, a defendant was convicted of drug-related crimes, and the State of California sought an enhanced sentence pursuant to a recidivist statute under which a defendant who had been convicted of a "serious felony" for a second time was subject to double the term of imprisonment to which the defendant would have been subject otherwise. Under California law, an assault was a "serious felony" if the defendant either inflicted great bodily injury or personally used a dangerous or deadly weapon. See id. In Monge, id. at 725, at the sentencing proceeding, the only evidence of the defendant's criminal history was a record that the defendant had been convicted of assault with a deadly weapon. The trial court found credible the prosecutor's allegation that the defendant had personally used a dangerous or deadly weapon—namely, a stick— and imposed an enhanced sentence under the recidivist statute. See id. On appeal, the State of California conceded that the evidence was insufficient to prove that the defendant had personally inflicted great bodily injury or used a deadly weapon—*i.e.*, that the

defendant had been convicted of a serious felony—but requested the opportunity to prove the same on remand. See id. The California Court of Appeal agreed that the evidence was insufficient, and concluded that the Double Jeopardy Clause barred the remand that the State of California had requested. See id. at 725-26. The Supreme Court of California reversed, and the Supreme Court of the United States affirmed. See id. at 726, 734.

The Court observed that Bullington, 451 U.S. at 432, 444-45, in which the Court applied the Double Jeopardy Clause to a capital sentencing proceeding, "established a narrow exception to the general rule that double jeopardy principles have no application in the sentencing context." Monge, 524 U.S. at 730 (citation and internal quotation marks omitted). In Monge, id. at 731-32, the Court declined to extend Bullington to noncapital sentencing proceedings because "the death penalty is unique in both its severity and its finality," and there is "acute need for reliability in capital sentencing proceedings." (Citation and internal quotation marks omitted). The Court "conclude[d] that *Bullington*'s rationale is confined to the unique circumstances of capital sentencing and that the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context." Monge, 524 U.S. at 734.

In a dissenting opinion, Justice Scalia agreed with the Court that the Double Jeopardy Clause does not apply to noncapital sentencing proceedings, but opined that, in Monge, the prior conviction constituted an element of a crime, not simply a sentencing factor. See id. at 737 (Scalia, J., dissenting). Justice Scalia acknowledged that his position was inconsistent with Almendarez-Torres—which, he opined, was erroneous, consistent with his dissent in that case. See Monge, 524 U.S. at 741 (Scalia, J., dissenting);

Almendarez-Torres, 523 U.S. at 249 (Scalia, J., dissenting).

In Monge, 524 U.S. at 728-29, the Court further explained that, in Almendarez-Torres, the Court "rejected an absolute rule that an enhancement constitutes an element of the offense any time that it increases the maximum sentence to which a defendant is exposed." The Court stated:

> Sentencing decisions favorable to the defendant, moreover, cannot generally be analogized to an acquittal. We have held that where an appeals court overturns a conviction on the ground that the prosecution proffered insufficient evidence of guilt, that finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial. *See Burks* [], 437 U.S. [at] 16[]. Where a similar failure of proof occurs in a sentencing proceeding, however, the analogy is inapt. The pronouncement of sentence simply does not "have the qualities of constitutional finality that attend an acquittal." [] *DiFrancesco*, 449 U.S. [at] 134[]; *see also Bullington*, [451 U.S.] at 438[] ("The imposition of a particular sentence usually is not regarded as an 'acquittal' of any more severe sentence that could have been imposed").

Monge, 524 U.S. at 729.

Subsequently, in Apprendi, 530 U.S. at 469, 490, the Supreme Court held that, under the Due Process Clause of the Fourteenth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Apprendi, id. at 469-70, a defendant and the State of New Jersey entered into a plea agreement under which the defendant would plead guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of third-degree unlawful possession of an antipersonnel bomb, and the State of New Jersey would nol pros the remaining charges and would have the right to request an enhanced sentence for one of the offenses on the ground that the defendant had acted with racial bias. Under New Jersey

law and pursuant to the plea agreement, if the defendant had acted with racial bias, he was subject to up to a total of thirty years of imprisonment, with a fifteen-year period of ineligibility for parole; otherwise, the defendant was subject to up to a total of twenty years of imprisonment. See id. at 470. A trial court accepted the guilty plea, found that the defendant had acted with racial bias, and imposed an enhanced sentence. See id. at 470-71. On appeal, the defendant contended that the Due Process Clause required the State to prove to a jury beyond a reasonable doubt the fact that he had acted with racial bias. See id. at 471. The New Jersey appellate courts affirmed, and the Supreme Court reversed. See id. at 471-72, 474.

The Court explained that, as to the two separate acts that New Jersey had criminalized—*i.e.*, unlawfully possessing a firearm and acting with racial bias—"[m]erely using the label 'sentence enhancement' to describe the latter surely does not provide a principled basis for treating them differently." Id. at 476. The Court observed: "Any possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown . . . during the years surrounding our Nation's founding." Id. at 478. The Court stated that, although "it is arguable that *Almendarez-Torres* was incorrectly decided," it was not necessary to revisit Almendarez-Torres; instead, the Court deemed Almendarez-Torres "a narrow exception to the general rule[.]" Id. at 489-90 (footnote omitted). In other words, although, generally speaking, any fact that increases the maximum possible sentence constitutes an element of a crime—and thus must be proven beyond a reasonable doubt—Almendarez-Torres created an exception for the fact of a prior conviction. See Apprendi, 530 U.S. at 488, 489-90.

In <u>Twigg</u>, 447 Md. at 21, 5, 133 A.3d at 1137, 1128, this Court held that the Double Jeopardy Clause did not bar resentencing for child abuse on remand where a trial court erroneously sentenced a defendant for both child abuse and second-degree rape instead of merging the conviction for the latter with the conviction for the former for sentencing purposes. In <u>Twigg</u>, <u>id.</u> at 8, 133 A.3d at 1130, a jury found the defendant guilty of child abuse, second-degree rape, third-degree sexual offense, and incest, and the trial court sentenced the defendant for all four crimes. On appeal, the defendant contended that the trial court should have merged the convictions for second-degree rape, third-degree sexual offense, and incest with the conviction for child abuse for sentencing purposes. See <u>id.</u> at 8, 133 A.3d at 1130. The Court of Special Appeals agreed, but vacated the sentences for all four crimes—including child abuse, the sentence for which the defendant had not challenged—and remanded with instructions to resentence the defendant for child abuse. See <u>id.</u> at 9, 133 A.3d at 1130. This Court affirmed in part, reversed in part, and remanded for resentencing. See <u>id.</u> at 30, 133 A.3d at 1143.

Notably, this Court held that the Court of Special Appeals had the authority to remand with instructions to resentence the defendant for child abuse. See <u>id.</u> at 10, 133 A.3d at 1131. This Court rejected the defendant's contention that such resentencing would violate the Double Jeopardy Clause or be inconsistent with due process. See <u>id.</u> at 21, 133 A.3d at 1137. Citing <u>DiFrancesco</u>, 449 U.S. at 132, this Court explained: "[R]esentencing does not offend double jeopardy principles." <u>Twigg</u>, 447 Md. at 21, 133 A.3d at 1137.

## The Doctrine of Collateral Estoppel

"The Supreme Court has recognized that the Double Jeopardy Clause incorporates

the doctrine of collateral estoppel." <u>Odum v. State</u>, 412 Md. 593, 603, 989 A.2d 232, 238 (2010) (citing <u>Ashe v. Swenson</u>, 397 U.S. 436, 444-45 (1970)).  Under the doctrine of collateral estoppel, which applies to both civil cases and criminal cases, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." <u>Odum</u>, 412 Md. at 603, 989 A.2d at 238 (quoting <u>Ashe</u>, 397 U.S. at 443) (internal quotation marks omitted).

Unlike the plea of *autrefois acquit*, the doctrine of collateral estoppel "is not based on two offenses being the same"; instead, it is based on two offenses "having a common necessary factual component." <u>Apostoledes v. State</u>, 323 Md. 456, 463, 593 A.2d 1117, 1121 (1991).  If a trial court or jury finds in a defendant's favor as to a common necessary factual issue at a trial, then "the State may not relitigate the same factual issue" at a subsequent trial.  <u>Id.</u> at 464, 593 A.2d at 1121.  The doctrine of collateral estoppel usually, but not always, arises in cases in which defendants have been acquitted.  <u>See State v. Woodson</u>, 338 Md. 322, 331, 658 A.2d 272, 277 (1995).

**Analysis**

Here, we conclude that, where an appellate court vacates an enhanced sentence due to insufficient evidence of a qualifying prior conviction, the plea of *autrefois acquit* and the doctrine of collateral estoppel do not bar a trial court from reimposing an enhanced sentence.

The plea of *autrefois acquit* does not apply where an appellate court vacates an enhanced sentence and remands for resentencing because the vacation of the enhanced sentence does not constitute an acquittal.  An acquittal is "a resolution, correct or not, of

some or all of the factual elements of the offense charged." Burks, 437 U.S. at 10 (citation and internal quotation marks omitted). As the Supreme Court held in Almendarez-Torres, 523 U.S. at 226, 235, and reaffirmed in Monge, 524 U.S. at 728-29, for purposes of statutes that authorize enhanced sentences, a qualifying prior conviction is not an element of a crime; it is simply a sentencing factor. Where an appellate court determines that the evidence was insufficient to establish a qualifying prior conviction, the appellate court's determination does not act as an acquittal or preclude a trial court from receiving additional evidence of a qualifying prior conviction.

The Supreme Court's holdings in Almendarez-Torres and Monge—that a qualifying prior conviction is not an element of a crime—were not undermined by the Court's holding in Apprendi. Significantly, in commenting on the significance of the Supreme Court's holding in Apprendi, the Court of Special Appeals stated: "Quite apart from the fact that we must take Supreme Court law as it is, not as it might become, we note that the *Apprendi* Court acknowledged the continued validity of *Monge* and *Almendarez-Torres* as applied to subsequent offender sentencing statutes." Scott, 230 Md. App. at 428 n.4, 148 A.3d at 82 n.4 (citing Apprendi, 530 U.S. at 488 n.14).

Indeed, rather than being undercut by the Supreme Court's holding in Apprendi, our conclusion that the Double Jeopardy Clause does not bar a trial court from reimposing an enhanced sentence is supported by Apprendi. In Apprendi, 530 U.S. at 490, the Supreme Court held that, "**[o]ther than the fact of a prior conviction,** any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added). In other words, in Apprendi,

the Court did not vitiate its holding in <u>Almendarez-Torres</u>, 523 U.S. at 226, and its reaffirmance in <u>Monge</u>, 524 U.S. at 728-29, that a qualifying prior conviction is not an element of a crime.  Although the Court remarked in <u>Apprendi</u> that "it is arguable that *Almendarez-Torres* was incorrectly decided," the Court declined to revisit <u>Almendarez-Torres</u>.  <u>Apprendi</u>, 530 U.S. at 489-90 (footnote omitted).  Scott is incorrect in contending that <u>Almendarez-Torres</u> and <u>Monge</u> should not be relied upon because they are inconsistent with <u>Apprendi</u>.  There is no such inconsistency; to the contrary, in <u>Apprendi</u>, the Supreme Court expressly acknowledged that it refrained from overruling <u>Almendarez-Torres</u>.[7]

In <u>Apprendi</u>, 530 U.S. at 488 n.14, the Court distinguished <u>Monge</u> on the ground that <u>Monge</u> involved a double jeopardy issue, while <u>Apprendi</u> did not.  Specifically, the Court stated: "*Monge* was [a] recidivism case in which the question presented and the bulk of the Court's analysis related to the scope of double jeopardy protections in sentencing." <u>Apprendi</u>, 530 U.S. at 488 n.14.  In other words, as counsel for the State in this case remarked at oral argument, <u>Apprendi</u> was a Sixth Amendment case involving the right to a jury trial, not a Fifth Amendment case involving the prohibition on double jeopardy. Given that the two cases involved the interpretation of different constitutional provisions,

---

[7]Similar to <u>Apprendi</u>, in another case on which Scott relies, <u>Alleyne v. United States</u>, ___ U.S. ___, 133 S. Ct. 2151, 2155, 2160 n.1 (2013), despite holding that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury[,]" the Supreme Court expressly refrained from overruling <u>Almendarez-Torres</u>, stating: "In *Almendarez-Torres* [], we recognized a narrow exception to this general rule for the fact of a prior conviction.  Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."  Scott interprets this statement as an invitation for defendants to challenge <u>Almendarez-Torres</u>.  Regardless of whether Scott's interpretation is correct, the fact remains that <u>Almendarez-Torres</u> has not been overruled.

- 34 -

absent express direction by the Supreme Court that its holding in <u>Apprendi</u> was intended to abrogate its holding in <u>Monge</u>—*i.e.*, that the prohibition on double jeopardy does not apply to resentencing proceedings in recidivist cases—<u>Apprendi</u> does not vitiate <u>Monge</u>.

Plainly, the Supreme Court's holdings in <u>Almendarez-Torres</u>, <u>Monge</u>, and, indeed, <u>Apprendi</u> are at odds with <u>Bowman</u>, 314 Md. at 740, 552 A.2d at 1310, in which this Court earlier held that the prohibition on double jeopardy barred the State from seeking an enhanced sentence on remand. This Court decided <u>Bowman</u> in 1989—*i.e.*, before the Supreme Court held in <u>Almendarez-Torres</u> in 1998, and reaffirmed in <u>Monge</u> in the same year, that the existence of a qualifying prior conviction is strictly a sentencing factor, not an element of a crime. <u>Bowman</u> also predates <u>Apprendi</u>, in which the Supreme Court did not overrule its holding in <u>Almendarez-Torres</u>. This case presents the first opportunity for this Court to review <u>Bowman</u> in light of the Supreme Court's holdings in <u>Almendarez-Torres</u>, <u>Monge</u>, and <u>Apprendi</u>.

Recognizing that <u>Bowman</u> is contradicted by the subsequent Supreme Court cases of <u>Almendarez-Torres</u> and <u>Monge</u>, and that <u>Apprendi</u> does not abrogate either case, we conclude that <u>Bowman</u> has been superseded by significant changes in double jeopardy law. Under the doctrine of *stare decisis*, an appellate court may overrule a case that either was "clearly wrong and contrary to established principles" or "has been superseded by significant changes in the law or facts." <u>Meyer v. State</u>, 445 Md. 648, 669, 128 A.3d 147, 159 (2015) (citations omitted); <u>see also</u> <u>DRD Pool Serv., Inc. v. Freed</u>, 416 Md. 46, 64, 5 A.3d 45, 55-56 (2010).

Having determined that <u>Bowman</u> has been superseded by significant changes in the

Supreme Court's jurisprudence, we must now ascertain whether there is any basis in Maryland common law on which <u>Bowman</u> survives. In <u>Bowman</u>, this Court did not expressly indicate whether its holding was based on the Double Jeopardy Clause or the common law of Maryland. Tellingly, however, in <u>Bowman</u>, this Court made no mention whatsoever of the common law prohibition on double jeopardy, and rather expressly referred to the Double Jeopardy Clause in discussing <u>Nelson</u>, 488 U.S. 33. <u>See Bowman</u>, 314 Md. at 739-40, 552 A.2d at 1309-10. In <u>Bowman</u>, <u>id.</u> at 730, 735, 739, 552 A.2d at 1305, 1308, 1309, this Court relied on Maryland case law in which, in turn, this Court referred to the prohibition on double jeopardy. Nevertheless, in all of the cases underlying <u>Bowman</u>, this Court either discussed, or issued a holding that was expressly based on, the Double Jeopardy Clause, not the prohibition on double jeopardy under the common law of Maryland. <u>See id.</u> at 735, 552 A.2d at 1308 (This Court discussed <u>Brown v. State</u>, 311 Md. 426, 430-31, 535 A.2d 485, 487 (1988), whose holding was expressly based on the Double Jeopardy Clause.); <u>Bowman</u>, 314 Md. at 730, 552 A.2d at 1305 (This Court cited <u>Whack v. State</u>, 288 Md. 137, 150, 142, 416 A.2d 265, 271, 267 (1980), <u>appeal dismissed</u>, 450 U.S. 990 (1981), whose holding was expressly based on the Double Jeopardy Clause, and in which this Court mentioned the prohibition on double jeopardy under the common law of Maryland in only one sentence.); <u>Bowman</u>, 314 Md. at 730, 552 A.2d at 1305 (This Court discussed <u>Temoney v. State</u>, 290 Md. 251, 257 & n.4, 429 A.2d 1018, 1021 & n.4 (1981), in which this Court addressed the Supreme Court's precedent regarding the Double Jeopardy Clause.); <u>Bowman</u>, 314 Md. at 739, 552 A.2d at 1309 (This Court cited <u>Butler v. State</u>, 46 Md. App. 317, 324, 416 A.2d 773, 777, <u>cert. denied</u>, 288 Md. 743 (1980), in

which the Court of Special Appeals discussed the Supreme Court's case law regarding the Double Jeopardy Clause.).

In light of this Court's lack of reference to the common law of Maryland, and its discussion of case law that pertained to the Double Jeopardy Clause, it is evident that this Court's holding in <u>Bowman</u> that the prohibition on double jeopardy prevented proof of a qualifying prior conviction on remand was based on an analysis of the Double Jeopardy Clause. This Court's holding in <u>Bowman</u> has been superseded by the Supreme Court's interpretation of the Double Jeopardy Clause in <u>Almendarez-Torres</u>, <u>Monge</u>, and <u>Apprendi</u>. Consistent with the longstanding principle of *stare decisis* that authorizes overruling a case that has been superseded by significant changes in the law, we overrule <u>Bowman</u>.

We decline Scott's invitation to extend the prohibition on double jeopardy under the common law of Maryland beyond the limits that the Supreme Court has placed on the Double Jeopardy Clause by holding that, after an appellate court vacates an enhanced sentence due to insufficient evidence of a qualifying prior conviction, the plea of *autrefois acquit* bars a trial court from receiving additional evidence of a qualifying prior conviction and reimposing an enhanced sentence. Instead, we adopt the Supreme Court's sound logic in <u>Almendarez-Torres</u> and <u>Monge</u>—specifically, the principle that that the prohibition on double jeopardy does not apply to the fact of a qualifying prior conviction—as applicable to the prohibition on double jeopardy under the common law of Maryland.

Our holding does not vitiate the principle that, when seeking an enhanced sentence, the State must establish a requisite prior conviction beyond a reasonable doubt. See <u>Bryant</u>

v. State, 436 Md. 653, 671, 84 A.3d 125, 136 (2014). The standard of proof by which the State must establish a requisite prior conviction is wholly independent of the issue of whether the prohibition on double jeopardy bars the State from attempting to establish a qualifying prior conviction under certain circumstances.[8]

Applying our holding to this case's facts, we conclude that the plea of *autrefois acquit* did not bar the circuit court from receiving additional evidence of Scott's prior conviction for aggravated assault in the District of Columbia. At the original sentencing proceeding, the prosecutor introduced certified copies of Scott's prior convictions and a statement of charges for the aggravated assault. The circuit court found that Scott had two prior convictions for crimes of violence, and imposed an enhanced sentence under CR § 14-101(d). The Court of Special Appeals vacated the enhanced sentence, concluding that the evidence was insufficient to support a finding that the conviction for aggravated assault constituted a conviction for a crime of violence, and remanded for resentencing. As explained above, a determination by an appellate court that the evidence is insufficient to support a finding of a qualifying prior conviction does not act as an acquittal, and does not bar the trial court from revisiting the matter of the qualifying prior conviction. It was entirely permissible for the circuit court, on remand, to admit into evidence a transcript of the guilty plea proceeding in the District of Columbia, and to determine that Scott was

---

[8]And, of course, our holding has no effect on the principle that a trial court, not a jury, determines whether a qualifying prior conviction exists. See Md. R. 4-245(e) ("Before sentencing and after giving the defendant an opportunity to be heard, the court shall determine whether the defendant is a subsequent offender as specified in the notice of the State's Attorney.").

subject to an enhanced sentence.

Like the plea of *autrefois acquit*, the doctrine of collateral estoppel does not bar a trial court from reimposing an enhanced sentence after an appellate court vacates an enhanced sentence due to insufficient evidence of a qualifying prior conviction. The doctrine of collateral estoppel precludes relitigation of a factual issue where there has been a finding in the defendant's favor as to the factual issue. See Apostoledes, 323 Md. at 464, 593 A.2d at 1121. The doctrine of collateral estoppel does not apply here because, at the original sentencing proceeding, the circuit court did not find in Scott's favor as to a factual issue. The Court of Special Appeals did not affirm a factual finding by the circuit court that Scott lacked the requisite prior convictions to be subject to an enhanced sentence; rather, that Court determined that the evidence was insufficient to support the circuit court's finding that Scott had the requisite prior convictions to be subject to an enhanced sentence.

We are unpersuaded by Scott's reliance on Ashe, 397 U.S. at 439, 446, in which the Supreme Court held that, where multiple people allegedly robbed multiple victims, and a jury acquitted a defendant of robbing one of the victims, the doctrine of collateral estoppel barred the government from attempting to prove, in a separate prosecution as to a different victim, that the defendant was one of the robbers. In Ashe, the acquittal rendered the doctrine of collateral estoppel applicable because the acquittal constituted a finding of fact in the defendant's favor as to whether he was indeed one of the robbers. By contrast, an appellate court's vacation of an enhanced sentence due to insufficient evidence of a qualifying prior conviction is not a finding of fact; as such, the doctrine of collateral

estoppel is inapplicable. Indeed, other than Ashe, Scott offers no case law supporting his contention that his resentencing is barred by the doctrine of collateral estoppel, and we know of none in which the Supreme Court or this Court has applied the doctrine of collateral estoppel in a noncapital sentencing proceeding to preclude resentencing by a trial court after an enhanced sentence is vacated for insufficient evidence.

For these reasons, we affirm the judgment of the Court of Special Appeals and hold that the circuit court was not precluded from reimposing the enhanced sentence of twenty-five years of imprisonment without the possibility of parole for attempted robbery with a dangerous weapon at resentencing.

## II. Concurrent Sentences

### The Parties' Contentions

Scott contends that the circuit court erred in concluding that it lacked the discretion to impose the new sentence for attempted robbery with a dangerous weapon concurrently with the existing sentences for use of a handgun in the commission of a crime of violence and conspiracy to commit robbery with a dangerous weapon. Scott argues that, on remand for resentencing, a trial court has the discretion to determine whether a new sentence will be imposed consecutively or concurrently with existing sentences that were not affected by the remand. Scott asserts that his argument is preserved for review because, in the circuit court, his counsel requested that the circuit court make the new sentence for attempted robbery with a dangerous weapon concurrent with the two existing sentences. Scott acknowledges that, in the Court of Special Appeals, he argued that the two existing sentences should have been concurrent with the new sentence for attempted robbery—not

the other way around, as he argues in this Court.  Scott asserts, however, that his argument

in the Court of Special Appeals was consistent with his argument in the circuit court.

The State responds that Scott's contention is not preserved for review because it

differs from the argument that he raised in the Court of Special Appeals.  The State

contends that, in the circuit court, Scott argued that the new sentence for attempted robbery

with a dangerous weapon should have been concurrent with the two existing sentences;

and, in the Court of Special Appeals, Scott argued the opposite—that the two existing

sentences should have been imposed to be concurrent with the new sentence for attempted

robbery with a dangerous weapon.  As to the merits, the State asserts that the circuit court

was correct in refraining from resentencing Scott for the convictions other than attempted

robbery with a dangerous weapon, as the Court of Special Appeals remanded solely for

resentencing for the offense of attempted robbery with a dangerous weapon.

### Standard of Review

An appellate court reviews without deference the issue of whether a trial court made

a legal error in sentencing.  See Bonilla v. State, 443 Md. 1, 6, 115 A.3d 98, 100-01 (2015).

### Preservation

Maryland Rule 8-131(a) governs preservation for appellate review generally, in

pertinent part, as follows:

> Ordinarily, the appellate court will not decide any [non-jurisdictional] issue
> unless it plainly appears by the record to have been raised in or decided by
> the trial court, but the Court may decide such an issue if necessary or
> desirable to guide the trial court or to avoid the expense and delay of another
> appeal.

Maryland Rule 8-131(b)(1) governs preservation for this Court's review where there

has been a decision by the Court of Special Appeals, in pertinent part, as follows:

> Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals . . . , the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.

Under Maryland Rule 8-131(b)(1), to preserve an issue for this Court's review, a party must raise the issue in the Court of Special Appeals if the case came before that Court. See State v. Earp, 319 Md. 156, 168 n.4, 571 A.2d 1227, 1233 n.4 (1990) (This Court concluded that the State failed to preserve an argument for review in this Court "by failing to raise the argument in the Court of Special Appeals."). For example, in Ferguson v. Cramer, 349 Md. 760, 775 n.8, 709 A.2d 1279, 1286 n.8 (1998), this Court concluded that an "issue [wa]s not preserved for our review because it was not advanced before the Court of Special Appeals and was not raised in the [] petition for writ of certiorari." By contrast, in Thompson v. UBS Fin. Servs., Inc., 443 Md. 47, 69 n.12, 115 A.3d 125, 138 n.12 (2015), this Court concluded that an issue was preserved for this Court's review because it was encompassed by "the broad issue" that was raised in the Court of Special Appeals.

Consistent with Maryland Rule 8-131(b)(1)'s use of the word "ordinarily," this Court has the discretion to consider an issue that was not preserved for this Court's review where "extraordinary circumstances" provide a reason to do so. Wynn v. State, 351 Md. 307, 323, 718 A.2d 588, 596 (1998). For example, in Montgomery Cty. v. May Dep't Stores Co., 352 Md. 183, 201, 721 A.2d 249, 258 (1998), we "exercise[d] our discretion under Maryland Rule 8-131(b)(1) to consider [a] question [that was raised for the first time in a party's brief] because of the public importance of the issue, which [wa]s likely to recur,

and for the guidance of the trial court on remand." By contrast, in <u>Wynn</u>, 351 Md. at 323-24, 718 A.2d at 596, this Court declined to exercise its discretion to consider an issue regarding an "'intent' exception" where the issue was not raised in the trial court, in response to the petition for a writ of *certiorari*, or in any cross-petition, and where the State's purpose in offering the relevant witness's testimony was not to prove the defendant's intent, but rather to prove whether the defendant obtained stolen property.

Concerning an illegal sentence, Maryland Rule 4-345(a) states: "The court may correct an illegal sentence at any time." Maryland Rule 4-345(a) applies only where a sentence is allegedly inherently illegal—*i.e.*, where a defendant contends that there was no underlying conviction, or that the sentence was not authorized for the underlying conviction. <u>See</u> <u>Colvin v. State</u>, 450 Md. 718, 725, 150 A.3d 850, 854 (2016). In other words, Maryland Rule 4-345(a) does not apply where there was allegedly a "flaw in the sentencing procedure." <u>Id.</u> at 725, 150 A.3d at 854 (citation and internal quotation marks omitted).

### Concurrent Sentences and Consecutive Sentences

"A [trial] court may make a sentence concurrent with[,] or consecutive to[,] any other unsuspended actual sentence of confinement that then exists." <u>Parker v. State</u>, 193 Md. App. 469, 486, 997 A.2d 912, 922 (2010) (citation and internal quotation marks omitted). Conversely, a trial court may not make a sentence concurrent with, or consecutive to, any other unsuspended actual sentence of confinement that does not then exist. <u>See</u> <u>DiPietrantonio v. State</u>, 61 Md. App. 528, 532-33, 487 A.2d 676, 678-79, <u>cert. denied</u>, 303 Md. 295, 493 A.2d 349 (1985).

The Court of Special Appeals first applied this principle in <u>Alston v. State</u>, 38 Md. App. 611, 615, 379 A.2d 754, 757 (1978), in which the Court held that a trial court erred in making a sentence concurrent with a sentence that another trial court was expected to impose—*i.e.*, a sentence that did not then exist. In <u>Alston</u>, <u>id.</u> at 612, 379 A.2d at 755, a defendant had been convicted, but had not yet been sentenced, in a Maryland trial court and in a District of Columbia trial court. The Maryland trial court imposed a sentence that was to be concurrent with the sentence that the District of Columbia trial court would impose. See <u>id.</u> at 612, 379 A.2d at 755. Afterward, the District of Columbia trial court imposed a sentence that was to be consecutive to the sentence that the Maryland trial court had imposed. See <u>id.</u> at 612, 379 A.2d at 755. As a result, even though the Maryland trial court purportedly imposed a concurrent sentence, the defendant began serving the Maryland sentence without receiving any credit toward the District of Columbia sentence. See <u>id.</u> at 614, 379 A.2d at 756. The Court of Special Appeals concluded that the Maryland trial court's sentence was improper "because it was made to run concurrently with a sentence that had not yet been meted out to the [defendant]." <u>Id.</u> at 615, 379 A.2d at 757. Accordingly, the Court vacated the Maryland trial court's sentence and remanded for resentencing. See <u>id.</u> at 615, 379 A.2d at 757.

In <u>Stanton v. State</u>, 290 Md. 245, 250, 428 A.2d 1224, 1227 (1981), this Court held that a trial court did not err in making a sentence consecutive to an existing District Court sentence that was later superseded by a circuit court sentence that resulted from a *de novo* appeal. In <u>Stanton</u>, 290 Md. at 246, 250, 428 A.2d at 1225, 1227, a circuit court convicted a defendant and deferred sentencing; in a second criminal case, the District Court convicted

and sentenced the defendant, who noted a *de novo* appeal; before the *de novo* appeal's disposition, in the first criminal case, the circuit court imposed a sentence that was consecutive to the District Court sentence; and, finally, in the *de novo* appeal in the second criminal case, the defendant was convicted, and the circuit court imposed a new sentence that superseded the District Court sentence. This Court concluded that it was proper for the circuit court to make the sentence in the first criminal case consecutive to the District Court sentence in the second criminal case, as the latter sentence existed at the time, even though it was later superseded. See id. at 250, 428 A.2d at 1227.

In DiPietrantonio, 61 Md. App. at 535, 529-30, 487 A.2d at 679, 677, the Court of Special Appeals held that, where a trial court imposed a sentence that included probation, and the defendant violated the order of probation, the trial court did not err in imposing a new sentence that was consecutive to an existing sentence in another criminal case. In DiPietrantonio, id. at 529, 487 A.2d at 677, a trial judge imposed a sentence that included both imprisonment and probation. After the defendant served the term of imprisonment, during the probationary period, in a second criminal case, the defendant was convicted of, and sentenced for, additional crimes. See id. at 530, 487 A.2d at 677. The second trial judge did not refer to the sentence in the first criminal case. See id. at 530, 487 A.2d at 677. In the first criminal case, the first trial judge revoked the defendant's probation and imposed a portion of the previously suspended period of imprisonment, consecutive to the sentence in the second criminal case. See id. at 530, 487 A.2d at 677. The Court of Special Appeals explained that the sentence in the second criminal case could not have been concurrent with, or consecutive to, the original sentence in the first criminal case, as the

- 45 -

defendant was not serving a term of imprisonment at the time. See id. at 534, 487 A.2d at 679. The Court held that the first trial judge did not err in making the new sentence in the first criminal case consecutive to the sentence in the second criminal case, as the defendant was serving a term of imprisonment at the time. See id. at 535, 487 A.2d at 679.

In Stouffer v. Pearson, 390 Md. 36, 41, 887 A.2d 623, 626 (2005), this Court held that a sentence for crimes that a defendant committed while on parole could not be consecutive to the defendant's term of parole because the defendant's parole was not revoked until after the defendant was sentenced. In Stouffer, id. at 41-42, 887 A.2d at 626, a trial court sentenced the defendant to a term of imprisonment; the defendant was released on parole; and, subsequently, the defendant was arrested. In a second criminal case, the defendant was convicted of, and sentenced for, additional crimes; the trial court made one of the sentences "'consecutive with any sentence on violation of parole[.]'" See id. at 42, 887 A.2d at 626. Afterward, the defendant's parole was revoked, and he was ordered to serve the balance of his original sentence. See id. at 42, 887 A.2d at 626.

This Court held that the trial court erred in making the sentence in the second criminal case consecutive to the defendant's term of parole, as that constituted "a sentence to commence in the future." Id. at 59, 887 A.2d at 636. This Court found "persuasive" the statement in DiPietrantonio, 61 Md. App. at 532, 487 A.2d at 678, that a trial court

> may make [a] sentence concurrent with[,] or consecutive to[,] whatever other sentence then exists, actually being served. [The trial court] may not, however, presume to bind the future. To do so would be, *ipso facto*, to usurp the sentencing prerogative of some other [trial] judge operating in a near or distant time yet to be.

Stouffer, 390 Md. at 58, 887 A.2d at 636 (brackets omitted). This Court concluded:

- 46 -

> When a parolee is sentenced for a new crime before revocation of parole, a [trial court] may not treat parole as an existing term of confinement and, as such, a new sentence may not be served consecutive to a parole term because a "sentence may not be consecutive with a term of confinement [that] is not then [in existence]."

Id. at 58-59, 887 A.2d at 636 (quoting DiPietrantonio, 61 Md. App. at 533, 487 A.2d at 679) (ellipsis omitted).

**Resentencing as to Sentences That the Defendant Did Not Challenge**

In Twigg, 447 Md. at 21, 5, 133 A.3d at 1137, 1128, this Court held that no Maryland law barred resentencing for child abuse on remand where a trial court erroneously sentenced a defendant for both child abuse and second-degree rape instead of merging the conviction for the latter with the conviction for the former for sentencing purposes, where the defendant had not challenged the sentence for child abuse. This Court noted that, in Jones v. State, 414 Md. 686, 690-92, 703, 997 A.2d 131, 133-34, 141 (2010), this Court held that, where the Court of Special Appeals concluded that a trial court erroneously sentenced a defendant for both a greater-inclusive offense and a lesser-included offense, vacated both sentences, and remanded for resentencing on the greater-inclusive offense, the trial court erred in refusing to allow the defendant to argue in mitigation during the resentencing proceeding. See Twigg, 447 Md. at 20, 133 A.3d at 1137. In Twigg, id. at 20-21, 133 A.3d at 1137, this Court observed that, in Jones, 414 Md. at 707, 997 A.2d at 143, this Court "expressed no concern that the Court of Special Appeals was without the authority to order a remand for resentencing on the greater[-inclusive] offense"; "[t]o the contrary, we stated that the trial court's 'primary task' on remand was to conduct the 'resentencing of the [defendant]' on the greater[-inclusive]

- 47 -

offense." In Twigg, 447 Md. at 21, 133 A.3d at 1137, this Court explained: "[The defendant] offers no authority for the proposition that remand for resentencing, as was done in *Jones* and as the Court of Special Appeals did in the present case, is unauthorized by Maryland statute, our rules, or our case law, and we are not aware of any."

This Court directed that, on remand, the trial court could resentence the defendant for child abuse to any term of imprisonment that would not cause the aggregate sentence to be greater than it originally was. See Twigg, 447 Md. at 30, 133 A.3d at 1142-43. Addressing the convictions for third-degree sexual offense and incest—*i.e.*, the convictions that, unlike second-degree rape, were not to be merged with the conviction for child abuse for sentencing purposes—this Court observed that the State did not seek to have the sentences for third-degree sexual offense and incest vacated because the trial court imposed the maximum possible sentences for both crimes. See id. at 30 n.14, 133 A.3d at 1143 n.14. This Court explained:

> We do not intend this opinion to be read as precluding, in the appropriate case, vacation of all sentences originally imposed on those convictions and sentences left undisturbed on appeal, so as to provide the court maximum flexibility on remand to fashion a proper sentence that takes into account all of the relevant facts and circumstances.

Id. at 30 n.14, 133 A.3d at 1143 n.14. This Court added that the only caveat was that, generally, the new aggregate sentence could not exceed the original one. See id. at 30 n.14, 133 A.3d at 1143 n.14.

### Analysis

Here, as a threshold matter, we conclude that Scott preserved for this Court's review his contention that the circuit court erred in not making the new sentence for attempted

- 48 -

robbery with a dangerous weapon concurrent with the two existing sentences. The circuit court sentenced Scott to twenty-five years of imprisonment, without the possibility of parole, for attempted robbery with a dangerous weapon; ten years of imprisonment, with all but five years suspended, followed by five years of supervised probation, consecutive to the sentence for attempted robbery with a dangerous weapon, for use of a handgun in the commission of a crime of violence; and ten years of imprisonment, with all but five years suspended, consecutive to the other two sentences, for conspiracy to commit robbery with a dangerous weapon. The Court of Special Appeals vacated the sentence for attempted robbery with a dangerous weapon and remanded for resentencing. The Court of Special Appeals's mandate stated in pertinent part: "SENTENCE ON COUNT 1 [(ATTEMPTED ROBBERY WITH A DANGEROUS WEAPON)] VACATED AND THE CASE IS REMANDED FOR RESENTENCING."

At the resentencing proceeding, the circuit court observed that the existing sentences for use of a handgun in the commission of a crime of violence and conspiracy to commit robbery with a dangerous weapon were not before it. Nonetheless, Scott's counsel contended that the two existing sentences were consecutive to a sentence that allegedly no longer existed, and requested that the circuit court make the new sentence for attempted robbery with a dangerous weapon concurrent with the two existing sentences. The circuit court responded that it lacked the discretion to do so, and added: "I'll hear from [] Scott as to how he feels or what he wants to say at this point." Scott's counsel responded: "Given the Court's rulings, the fact that the Court is ruling it has essentially no discretion in the sentence it's going to impose, [] Scott has nothing to add." The circuit court reimposed the

original sentence for attempted robbery with a dangerous weapon—twenty-five years of imprisonment without the possibility of parole. The circuit court noted that the other two "sentence[s] remain[ed] the same."

In the Court of Special Appeals, Scott contended that the circuit court erred in not making the two existing sentences concurrent with the new sentence for attempted robbery with a dangerous weapon. In finding the issue not to be preserved, the Court of Special Appeals noted that the circuit court expressly "gave [Scott] the opportunity to allocute and present mitigating information[,]" which, through counsel, Scott declined to do. Scott, 230 Md. App. at 445, 148 A.3d at 92. Accordingly, the Court of Special Appeals concluded that Scott had waived the argument that the circuit court had violated his right to allocution and to present mitigating evidence. Id. at 444-45, 148 A.3d at 92.[9] The Court of Special Appeals also concluded that Scott had failed to preserve for appellate review his contention that the circuit court erred in not making the two existing sentences concurrent with the new sentence for attempted robbery with a dangerous weapon because, in the circuit court, Scott had advanced a different argument—namely, that the circuit court should have imposed the new sentence for attempted robbery with a dangerous weapon concurrently

---

[9]We do not interpret the conclusion of the Court of Special Appeals to suggest that allocution is a proper vehicle for preserving issues for appellate review, which it is not. In other words, a defendant does not waive appellate review of an issue by failing to raise it during allocution, which is simply an opportunity for a defendant "to explain in his [or her] own words the circumstances of the crime as well as his [or her] feelings regarding his [or her] conduct, culpability, and sentencing." Jones, 414 Md. at 697, 997 A.2d at 137 (citation and internal quotation marks omitted). Here, in our view, the Court of Special Appeals determined only that Scott had waived the contention that the circuit court refused to consider allocution and mitigating evidence, and not that Scott had forfeited appellate review of the argument concerning concurrent sentences by failing to allocute.

with the two existing sentences.  See Scott, 230 Md. App. at 445-46, 148 A.3d at 92-93.

Although Scott's argument in the circuit court technically differed from his argument in the Court of Special Appeals, we find this circumstance to be a distinction without a difference.  Regardless of which sentence or set of sentences that Scott argued should have been made concurrent with the other—*i.e.*, whether the new sentence for attempted robbery with a dangerous weapon allegedly should have been concurrent with the two existing sentences, or vice-versa—Scott sought to serve the sentence for attempted robbery with a dangerous weapon and the two existing sentences at the same time; *i.e.*, Scott sought concurrent sentences.

In this Court, Scott repeats the contention that he raised in the circuit court—namely, that the circuit court erred in not making the new sentence for attempted robbery with a dangerous weapon concurrent with the two existing sentences.  As such, Scott preserved his contention in this Court for appellate review pursuant to Maryland Rule 8-131(a).  In light of the circumstances that Scott's contention in this Court is identical to the one that he raised in the circuit court, and that Scott argued in favor of the same ultimate outcome in the Court of Special Appeals, we conclude that Scott's contention is preserved for this Court's review.

Turning to the merits, we conclude that, where an appellate court vacates a sentence to which another sentence is ordered to be served consecutively and remands for resentencing without vacating the consecutive sentence, the non-vacated consecutive sentence remains consecutive to the newly imposed sentence—*i.e.*, the trial court cannot make the new sentence concurrent with the non-vacated consecutive sentence.

In this case, the Court of Special Appeals vacated the sentence for attempted robbery with a dangerous weapon, and remanded for resentencing without vacating the sentences for use of a handgun in the commission of a crime of violence and conspiracy to commit robbery with a dangerous weapon. Scott did not challenge the validity of the latter two sentences. The Court of Special Appeals vacated only the first sentence—which was an enhanced sentence—due to insufficient evidence of Scott's prior convictions. As discussed above in Part I, the circuit court had the authority to admit additional evidence of Scott's prior convictions at the resentencing proceeding, and to reimpose the enhanced sentence.

We are not persuaded by Scott's reliance on Twigg for the proposition that the circuit court had the authority to vacate the sentences that had not been challenged on appeal. To be sure, under Twigg, 447 Md. at 20-21, 133 A.3d at 1137, the Court of Special Appeals had the authority in this case to vacate all four sentences, and remand for resentencing as to all four sentences. However, the Court of Special Appeals did not do so. A critical difference between this case and Twigg is that, in the latter, the Court of Special Appeals vacated all of the sentences—including the one that the defendant had not challenged—and remanded with express instructions to resentence the defendant as to all of the sentences. By contrast, here, the Court of Special Appeals vacated only the first sentence, and did not grant the circuit court the authority to resentence Scott as to the other two sentences on remand.[10]

---

[10]We are unpersuaded by Scott's contention that Twigg vests a trial court with the discretion to resentence as to a sentence that an appellate court did not vacate. Twigg did not involve a trial court that resentenced as to a non-vacated sentence. To the contrary, in

Without the sentences for use of a handgun in the commission of a crime of violence and conspiracy to commit robbery with a dangerous weapon having been vacated and remanded for resentencing, the circuit court could not resentence Scott as to those two sentences on remand.[11]

Scott raises a red herring in contending that, when the Court of Special Appeals vacated the sentence for attempted robbery with a dangerous weapon, the other two sentences became consecutive to a sentence that no longer existed. In this case, the circuit court did not violate case law prohibiting the imposition of a sentence consecutively to a sentence that does not exist. At the time of the original sentencing proceeding, the circuit court properly imposed sentences consecutively to an existing sentence. The sentences for use of a handgun in the commission of a crime of violence and conspiracy to commit robbery with a dangerous weapon were imposed consecutively to a sentence that existed at the time of their imposition.

Although this Court has held that a trial court may not impose a sentence that is

---

Twigg, 447 Md. at 9, 133 A.3d at 1130, it was the Court of Special Appeals that vacated the sentences and ordered resentencing. Whenever this Court mentioned the trial court's "discretion," this Court was referring to the trial court's discretion to resentence as to a vacated sentence. See id. at 5, 19 & n.11, 30, 133 A.3d at 1128, 1136 & n.11, 1142-43. Thus, under Twigg, an appellate court, not a trial court, has the discretion to vacate a sentence that the defendant did not challenge.

[11]The circuit court's revisory power over the two sentences was governed by Maryland Rule 4-345 (Sentencing--Revisory Power of Court), but that Rule did not apply here. Maryland Rule 4-345(a) allows a court to correct an inherently illegal sentence, but there was no allegation that the two sentences were inherently illegal. Similarly, Maryland Rule 4-345(b) grants a court "revisory power over a sentence in case of fraud, mistake, or irregularity[,]" but there was no allegation of any such circumstance.

- 53 -

concurrent with, or consecutive to, a sentence that does not exist, see Stouffer, 390 Md. at 59, 887 A.2d at 636, this Court has never held that an appellate court cannot vacate a sentence to which another sentence is consecutive and remand for resentencing with the non-vacated sentence remaining imposed consecutively.[12]  Such a rule would prevent an appellate court from vacating only a sentence that was not imposed properly where other sentences were imposed to be consecutive, and would necessarily require that the appellate court vacate all sentences—even the ones that have no defects—and remand for resentencing.  Simply put, Stouffer and similar cases do not bar an appellate court from vacating solely a sentence to which a non-vacated sentence was ordered to be consecutive.

For these reasons, the circuit court did not err in declining to make the new sentence

---

[12]In Twigg, 447 Md. at 30 n.14, 133 A.3d at 1143 n.14, in a footnote, we remarked:

> The State does not seek to have vacated the sentences for incest and third degree sexual offense, for both of which [the defendant] received the maximum sentence.  We do not intend this opinion to be read as precluding, in the appropriate case, vacation of all sentences originally imposed on those convictions and sentences left undisturbed on appeal, so as to provide the court maximum flexibility on remand to fashion a proper sentence that takes into account all of the relevant facts and circumstances.

Although the Court of Special Appeals vacated the sentences for child abuse, second-degree rape, third-degree sexual offense, and incest, on review, this Court vacated the sentence only for second-degree rape, and stated that, at the new sentencing hearing, "the sentencing court has the discretion to resentence [the defendant] to a term of active incarceration on the child abuse conviction[,]" the conviction with which the conviction for second-degree rape was to merge for sentencing purposes. Id. at 5, 133 A.3d at 1128. Our observation in the footnote in Twigg supports the conclusion that a bright-line rule requiring an appellate court to vacate all sentences where only one sentence is found to be deficient is not warranted. It is properly left to the discretion of the appellate court, based on the circumstances of the case, whether to vacate the deficient sentence alone or all sentences imposed.

for attempted robbery with a dangerous weapon concurrent with the existing sentences for use of a handgun in the commission of a crime of violence and conspiracy to commit robbery with a dangerous weapon.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**