J-S55014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL RAMOS, | : | |
| | : | |
| Appellant | : | No. 3217 EDA 2017 |

Appeal from the Judgment of Sentence June 13, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0005790-2016

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 17, 2018**

Appellant, Angel Ramos, appeals from the judgment of sentence entered on June 13, 2017, as made final by the denial of his post-sentence motion on September 11, 2017.  We affirm, in part, vacate, in part, and remand for further proceedings consistent with this memorandum.

The trial court aptly summarized the factual background and procedural history in this case as follows.

> [On March 6, 2017, Appellant appeared before the trial court to enter a guilty plea at docket number 5790-2016.  At that docket number,]  Appellant pled guilty to two counts of aggravated assault,[1] possession of an instrument of crime,[2] two counts of

---

[1] Count 2:  18 Pa.C.S. § 2702(a)(1); Count 3:  18 Pa.C.S. § 2702(a)(4).

[2] Count 6:  18 Pa.C.S. § 907(a).

indecent assault,[3] and terroristic threats.[4] [] In the course of Appellant's guilty plea [at] criminal information No. 5790-2016, he agreed that the following recitation of the facts was accurate:

On June 7th of 2016, [B.D.] went to the Planet Fitness located at the Center Point Shopping Center on Street Road in Warminster, Bucks County.

Following her workout, she walked alone to her car and got into it to leave. Her car door was suddenly opened and an unknown male, subsequently identified as [Appellant] forced his way [into the vehicle]. He was holding a knife with a 4 to 5 inch blade. He held the knife to her neck. [B.D.] began to scream[,] to which [Appellant] stated he would kill her if she did not stop screaming.

With the knife to her throat, [Appellant] began to kiss [B.D.] on the face and neck and he ripped her shirt. He then placed his hand on her breast and started to rub her on the outside of her clothing. [B.D.] began to scream for help. She attempted to grab the knife from him. The defendant then yelled, you are going to die, bitch, and told her he would kill her. He began making stabbing motions towards her as she struggled under him.

The knife then struck the back of [B.D.'s] head and neck area. She was able to get away from under [Appellant] and ran bleeding towards the Planet Fitness. She was taken to Abington Hospital and treated for lacerations to the back of her neck and to her hand.

Several witnesses from the Planet Fitness parking lot observed [Appellant] run from the area of the victim's car towards Street Road. Warminster Police were flagged down by the pedestrians after they observed [Appellant] in the shopping area.

---

[3] Count 9: 18 Pa.C.S. § 3126(a)(2); Count 10: 18 Pa.C.S. § 3126(a)(3).

[4] Count 11: 18 Pa.C.S. § 2706(a)(1).

Police detained [Appellant] and observed blood on his hands and shirt. Swabs of this blood were sent to Bode Cellmark DNA Lab along with reference samples from [] [B.D.]. The blood on [Appellant's] hands and clothing matched that of [] [B.D.].

N.T. [Guilty Plea], 3/6/17, pp. 30-34.

During the presentation of the factual basis for the plea, [the trial court] asked Appellant if there was anything he wished to correct or add, and he declined. *Id.* at 31-32. He advised the [trial c]ourt that he had previously discussed the facts with counsel. *Id.* At the conclusion of Commonwealth's summary, [Appellant] also confirmed that the district attorney had accurately stated the facts. *Id.* at 31-32, 34.

[Prior to the entry of Appellant's guilty plea on March 6, 2017, the trial court] administered an oral colloquy to all defendants present on that date, including Appellant. In the course of this initial colloquy, Appellant acknowledged that he was entering his plea voluntarily and of his own free will, and that he did not receive any promises as to sentence or threats from anyone meant to force a guilty plea. *Id*. at 2-3. Appellant was advised of his right to a jury trial and the presumption of innocence throughout trial. *Id.* at 3-6. Following this initial colloquy, [the trial c]ourt discussed the nature of the charges to which [] Appellant was pleading guilty. *Id.* at 11-20. During this discussion, Appellant interjected that he was "angry [and] enraged" because he did not remember the night of the incident due to being intoxicated. *Id.* at 14-15. Appellant further stated that he wanted to "get it over with." *Id.* at 16. In light of these statements, [the court] recessed and instructed Appellant's counsel to review the evidence with Appellant an additional time and answer any further questions Appellant may have had. *Id.* at 17-18. When [the court] reconvened, Appellant acknowledged that he still wished to plead guilty after going over the evidence with his attorney. *Id.* at 18-19. Prior to the proceeding, Appellant answered questions on his guilty plea colloquy form. *Id.* at 29. He reviewed the form with counsel, initialed each page, signed the form, and acknowledged that he answered all of counsel's questions honestly. *Id.* The form was admitted into evidence. *Id.* at 30.

Further, th[e trial c]ourt discussed the range of possible sentences for each offense with Appellant. *Id.* at 11-13, 20-23. The

maximum sentence for each offense was as follows: 20 years' incarceration for aggravated assault causing serious bodily injury, ten years' incarceration for aggravated assault causing bodily injury with a deadly weapon, and five years' incarceration each for possession of an instrument of crime, indecent assault [by] forcible compulsion, indecent assault by threat of forcible compulsion, and terroristic threats. *Id.* [The court] also discussed the sentencing guidelines for Count 2, aggravated assault causing serious bodily injury, which called for 78 to 90 months in the standard range, 102 months in the aggravated range, and 66 months in the mitigated range. *Id.* at 23. After finding that Appellant entered a knowing, voluntary and intelligent plea, [the court] deferred sentencing for an assessment before the Sexual Offender Assessment Board ("SOAB") pursuant to the Sexual Offender Registration and Notification Act ("SORNA"). 42 Pa.C.S.[A.] § 9799 *et seq*.

On June 13, 2017, [the trial court] held a sentencing hearing. N.T. [Sentencing,] 6/13/17, [at] 3. Prior to the hearing, the SOAB submitted an evaluation finding that Appellant met the criteria for classification as a sexually violent predator ("SVP"). *Id.* at 4. The report additionally diagnosed Appellant with anti-social personality disorder. *Id.* At the hearing, Appellant waived his right to an SVP hearing, and th[e trial c]ourt found that Appellant met the criteria to be classified as an SVP. *Id.* at 7-8.[5]

Additionally, th[e trial c]ourt heard testimony from Appellant, who apologized to the victim and described his past struggles with drug addiction and criminal behavior that began after the death of his one-year old son in 1987 or 1988. *Id.* at 24-26. Despite his expressed frustration with "not knowing" what happened during the prior proceeding, Appellant again admitted his responsibility for the crime:

> And I am so sorry to the victim. I wish she was here. I'm really, really sorry. I am responsible for that because as the DNA shows I'm responsible, and when they showed me, the detectives showed me that the DNA was mine, so I am – I

---

5 During victim impact testimony offered at a separate docket number, Appellant interrupted the sentencing proceedings and expressed his desire to withdraw his guilty plea to that offense. *Id.* at 17-20. Appellant, however, did not withdraw his guilty plea at criminal information 5790-2016.

want to take responsibility for that because my DNA would have never been in that place when this happened if I was not there.

***Id.*** at 24.

[Evidence introduced at Appellant's sentencing hearing established that he] has an extensive criminal history. In July 1987, Appellant was convicted of possession with intent to deliver a controlled substance and received two years' probation. [***Id.*** at] 10. In July 1988, Appellant was convicted of receiving stolen property, graded as a felony of the third degree, and received a sentence of time-served to 23 months' probation. ***Id.*** at 10-11. In January 1991, Appellant was convicted in three separate cases for possession with intent to deliver a controlled substance. ***Id.*** at 11. Appellant received a one- to two-year sentence on the first charge, and a concurrent four- to eight-year sentence on the second and third charges. ***Id.*** In February 1991, Appellant was convicted of possession with intent to deliver a controlled substance and received a sentence of 18 to 36 months [of incarceration]. ***Id.*** In October 1995, Appellant was convicted of possession with intent to deliver a controlled substance and received a sentence of [11 1/2] to 23 months. ***Id.*** In April 2002, Appellant was convicted of possession with intent to deliver a controlled substance and received a three- to seven-year sentence. ***Id.*** On that same date, Appellant pled guilty to receiving stolen property and carrying a firearm without a license, and received a concurrent three-to seven-year sentence. ***Id.*** Additionally, on March 3, 2015, [an order granting] a petition for protection from abuse [was entered] against Appellant[.]

Following testimony, [the trial court] sentenced Appellant as follows: ten to 20 years' incarceration on Count 2, aggravated assault causing serious bodily injury; two and one-half to five years' incarceration on Count 6, possession of an instrument of crime; two and one-half to five years' incarceration on Count 9, indecent assault by forcible compulsion; and two and one-half to five years' incarceration on Count 11, terroristic threats. ***Id.*** at 33. [The court] ordered that the above sentences run consecutively with one-another, resulting in an aggregate sentence of [17½] to 35 years' incarceration. [The court] imposed no further penalty for Counts 3 and 10, and granted the Commonwealth's request to *nol pros* Counts 1, 4, 5, 7 and 8. ***Id.*** at 33-34.

> In sentencing Appellant, [the trial court] departed from the above-referenced sentencing guidelines due to the gravity of the offense, its effect on the victim, the need for community protection, and the Appellant's rehabilitative needs. [The court] considered Appellant's "history not only of convictions but of violence" and the fact that Appellant served state sentences and had opportunities for treatment. *Id.* at 32. Regarding the nature of the offense, [the court] considered that the victim was "not only physically assaulted, these were knife blows to the head. In addition to that there were multiple verbal—violent, verbal threats. And furthermore she was sexually assaulted." *Id.* [The court] summarized Appellant's crimes and [its] reasoning as follows:

>> This is a violent and cruel episode, and that anything less than a significant sentence, given the fact that [Appellant] has already served lengthy sentences, will not only fail to protect the community, but it will not address [Appellant's] rehabilitative needs[,] as identified in the assessment, meaning the diagnoses of anti-social traits—personality. *Id.* at 32-33. Further, [the court] considered [] Appellant's age and the impact that his son's death had on his life. *Id.* at 31. Finally, in discussing the SOAB report, [the court] specified that [it] would consider the report in imposing sentence, but would specifically disregard any allegations in the report that did not amount [to] a conviction.

> *Id.* at 8-9, 32.

> On July 23, 2017, Appellant filed a [post-sentence motion] for reconsideration of sentence. On September 11, 2017, [the trial c]ourt held a hearing and denied Appellant's motion.

Trial Court Opinion, 12/26/17, at 1-7 (order of recitation amended; miscellaneous capitalization omitted).

Appellant's brief presents the following issues for our consideration.

Whether [] Appellant's guilty plea was knowing, intelligent and voluntary?

- 6 -

Whether the trial court abused its discretion in sentencing [Appellant] to a sentence of [not less than] 17½ to [not more than] 35 years, which exceeded the standard and aggravated guideline ranges for the crimes [to which Appellant pled guilty?]

Whether the Sexual Violent Predator (SVP) designation as provided under 42 Pa.C.S.A. § 9799 is unconstitutional pursuant to **Commonwealth v. Butler**, [173 A.3d 1212 (Pa. Super. 2018), *appeal granted*, 190 A.3d 581 (Pa. 2018)] and **Commonwealth v. Muniz**, 164 A.3d 189 (Pa. 2017)?

Appellant's Brief at 7.

We have carefully reviewed the certified record, the submissions of the parties, and the opinion of the trial court. Based upon our review, we conclude that the trial court correctly held that Appellant entered a valid guilty to the charges lodged at CP-09-CR-0005790-2016. Moreover, because the trial court has adequately and accurately addressed the validity of Appellant's guilty plea, we adopt the trial court's opinion on this issue as our own. **See** Trial Court Opinion, 12/26/17, at 9-10.[6] In addition, we conclude that the trial court did not abuse its discretion in fixing Appellant's sentence and we again adopt the trial court's apt discussion of this claim.[7] **See Id.** at 11-13.

_____

[6] To the trial court's conclusion that Appellant was well aware of both the nature and consequences of his guilty plea, we add only that, unlike the situation before this Court in **Commonwealth v. Hart**, 174 A.3d 660 (Pa. Super. 2017), in which we invalidated a guilty plea where the defendant was not advised of SORNA's registration requirements either at the time of his plea or at sentencing, Appellant here was thoroughly colloquied, both orally and in writing, as to the sex offender registration requirements that attached to his convictions.

[7] For the record, we note that Appellant properly invoked our jurisdiction to consider his challenge to the discretionary aspects of his sentence by filing a

As a final matter, we concur in the trial court's conclusion that Appellant's SVP designation and registration requirements are unconstitutional under this Court's decision in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2018), *appeal granted*, 190 A.3d 581 (Pa. 2018).[8]  Accordingly, we vacate Appellant's SVP designation and remand this case for the purpose of issuing appropriate notice under 42 Pa.C.S.A. § 9799.23 as to Appellant's tier-based registration obligations.  Because we have adopted the trial court's opinion as our own, we direct the parties to include a copy of the trial court's opinion with all future filings regarding our disposition of this appeal.  The victim's name shall be redacted from any copy of the trial court's opinion that is filed in the future.

_____

timely notice of appeal, preserving his claims through a post-sentence motion and a concise statement, and raising a substantial question for our review. **See Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011) (listing four-part inquiry for preserving discretionary sentencing challenges); **see also Commonwealth v. Felmlee**, 828 A.2d 1105, 1108 (Pa. Super. 2003) (claim that trial court erred by imposing aggravated range sentence without consideration of mitigating circumstances raises a substantial question).

[8] We note that, on July 31, 2018, the Pennsylvania Supreme Court granted a petition for allowance of appeal in **Butler** to address the following issue:

> Whether the Superior Court of Pennsylvania erred in vacating the trial court's Order finding [Respondent] to be [a Sexually Violent Predator ("SVP") ] by extrapolating the decision in [**Commonwealth v. Muniz**, 640 Pa. 699, 164 A.3d 1189 (2017),] to declare SVP hearings and designations unconstitutional under 42 Pa.C.S. § 9799.24(e)(3).

**Commonwealth v. Butler**, 2018 WL 3633945, at *1 (Pa. 2018).

Judgment of sentence affirmed, in part, and vacated, in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/17/18

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :
                                    :
         v.                          :      No. CP-09-CR-0005790-2016
                                    :

ANGEL RAMOS                     :

OPINION

Defendant Angel Ramos ("Appellant") appeals to the Superior Court of Pennsylvania

from his guilty plea entered on March 6, 2017, the judgment of sentence imposed on June 13,

2017, and the denial of his Post Trial Motion for Reconsideration of Sentence on September 11,

2017. We file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## I.      FACTUAL BACKGROUND

On March 6, 2017, Appellant appeared before this Court for guilty pleas in two criminal

matters.[1] In Criminal Information No. 5790-2016, Appellant pled guilty to two counts of

Aggravated Assault,[2] Possession of an Instrument of Crime,[3] two counts of Indecent Assault,[4]

and Terroristic Threats.[5] Appellant also pled guilty in Criminal Information No. 4738 of 2016 to

two counts each of Unlawful Contact with a Minor for the Purpose of a Sexual Offense,[6]

Indecent Assault of a Person Less than 13 Years of Age,[7] Endangering the Welfare of Children

by a Parent or Guardian,[8] and Corruption of Minors,[9] but at the time of sentencing was allowed

to withdraw his plea in that matter. See infra Part II, p. 5. In the course of Appellant's guilty

---

[1] See Criminal Information No. 5790-2016; see also Criminal Information No. 4738-2016.
[2] Count 2: 18 Pa.C.S. § 2702(a)(1); Count 3: 18 Pa.C.S. § 2702(a)(4).
[3] Count 6: 18 Pa.C.S. § 907(a).
[4] Count 9: 18 Pa.C.S. § 3126(a)(2); Count 10: 18 Pa.C.S. § 3126(a)(3).
[5] Count 11: 18 Pa.C.S. § 2706(a)(1).
[6] Counts 3 and 4: 18 Pa.C.S. § 6318(a)(1).
[7] Counts 5 and 6: 18 Pa.C.S. § 3126(a)(7).
[8] Counts 7 and 8: 18 Pa.C.S. § 4304(a)(1).
[9] Counts 9 and 10: 18 Pa.C.S. § 6301(a)(1)(ii).

1

plea to Criminal Information No. 5790-2016, he agreed that the following recitation of the facts was accurate:

On June 7th of 2016, [B.D.] went to the Planet Fitness located at the Center Point Shopping Center on Street Road in Warminster, Bucks County.

Following her workout, she walked alone to her car and got into it to leave. Her car door was suddenly opened and an unknown male, subsequently identified as the defendant, Angel Ramos, forced his way in. He was holding a knife with a 4 to 5 inch blade. He held the knife to her neck. [B.D.] began to scream to which he stated he would kill her if she did not stop screaming.

With the knife to her throat, he began to kiss her on the face and neck and he ripped her shirt. He then placed his hand on her breast and started to rub her on the outside of her clothing. [B.D.] began to scream for help. She attempted to grab the knife from him. The defendant then yelled, you are going to die, bitch, and told her he would kill her. He began making stabbing motions towards her as she struggled under him.

The knife then struck the back of her head and neck area. She was able to get away from under him and ran bleeding towards the Planet Fitness. She was taken to Abington Hospital and treated for lacerations to the back of her neck and to her hand.

Several witnesses from the Planet Fitness parking lot observed the defendant run from the area of the victim's car towards Street Road. Warminster Police were flagged down by pedestrians after they observed the defendant in the shopping area.

Police detained the defendant and observed blood on his hands and shirt. Swabs of this blood were sent to Bode Cellmark DNA Lab along with reference samples from [B.D.]. The blood on the defendant's hands and clothing matched that of [B.D.].

N.T. 3/6/17, pp. 30-34. During the presentation of the factual basis for the plea, we asked Appellant if there was anything he wished to correct or add, and he declined. Id. at 31-32. He advised the Court that he had previously discussed the facts with counsel. Id. At the conclusion of Commonwealth's summary, he also confirmed that the District Attorney had accurately stated the facts. Id. at 31-32, 34.

Appellant has an extensive criminal history. In July 1987, Appellant was convicted of Possession with Intent to Deliver a Controlled Substance and received two years' probation.

2

N.T. 6/13/17, p. 10. In July 1988, Appellant was convicted of Receiving Stolen Property, graded as a felony of the third degree, and received a sentence of time-served to 23 months' probation. Id. at 10-11. In January 1991, Appellant was convicted in three separate cases for Possession with Intent to Deliver a Controlled Substance. Id. at 11. Appellant received a one- to two-year sentence on the first charge, and a concurrent four- to eight-year sentence on the second and third charges. Id. In February 1991, Appellant was convicted of Possession with Intent to Deliver a Controlled Substance and received a sentence of 18 to 36 months. Id. In October 1995, Appellant was convicted of Possession with Intent to Deliver a Controlled Substance and received a sentence of eleven and one-half to 23 months. Id. In April 2002, Appellant was convicted of Possession with Intent to Deliver a Controlled Substance and received a three- to seven-year sentence. Id. On that same date, Appellant pled guilty to Receiving Stolen Property and Carrying a Firearm without a License, and received a concurrent three-to seven-year sentence. Id. Additionally, on March 3, 2015, a Petition for Protection from Abuse against Appellant was granted.

## II.   PROCEDURAL HISTORY

On March 6, 2017, this Court initially administered an oral colloquy to all defendants present on that date, including Appellant. In the course of this initial colloquy, Appellant acknowledged that he was entering his plea voluntarily and of his own free will, and that he did not receive any promises as to sentence or threats from anyone meant to force a guilty plea. N.T. 3/6/17, pp. 2-3. Appellant was advised of his right to a jury trial and the presumption of innocence throughout trial. Id. at 3-6. Following this initial colloquy, this Court discussed the nature of the charges to which the Appellant was pleading guilty. Id. at 11-20. During this discussion, Appellant interjected that he was "angry [and] enraged" because he did not remember the night of the incident due to being intoxicated. Id. at 14-15. Appellant further stated that he

3

wanted to "get it over with." Id. at 16. In light of these statements, we recessed and instructed Appellant's counsel to review the evidence with Appellant an additional time and answer any further questions Appellant may have had. Id. at 17-18. When we reconvened, Appellant acknowledged that he still wished to plead guilty after going over the evidence with his attorney. Id. at 18-19. Prior to the proceeding, Appellant answered questions on his guilty plea colloquy form. Id. at 29. He reviewed the form with counsel, initialed each page, signed the form, and acknowledged that he answered all of counsel's questions honestly. Id. The form was admitted into evidence. Id. at 30.

Further, this Court discussed the range of possible sentences for each offense with Appellant. Id. at 11-13, 20-23. The maximum sentence for each offense was as follows: 20 years' incarceration for Aggravated Assault Causing Serious Bodily Injury, ten years' incarceration for Aggravated Assault Causing Bodily Injury with a Deadly Weapon, and five years' incarceration each for Possession of an Instrument of Crime, Indecent Assault by Forcible Compulsion, Indecent Assault by Threat of Forcible Compulsion, and Terroristic Threats. Id. We also discussed the sentencing guidelines for Count 2, Aggravated Assault Causing Serious Bodily Injury, which called for 78 to 90 months in the standard range, 102 months in the aggravated range, and 66 months in the mitigated range. Id. at 23. After finding that Appellant entered a knowing, voluntary and intelligent plea, we deferred sentencing for an assessment before the Sexual Offender Assessment Board ("SOAB") pursuant to the Sexual Offender Registration and Notification Act ("SORNA"). 42 Pa.C.S. § 9799 et seq.

On June 13, 2017, we held a sentencing hearing. N.T. 6/13/17, p. 3. Prior to the hearing, the SOAB submitted an evaluation finding that Appellant met the criteria for classification as a sexually violent predator ("SVP"). Id. at 4. The report additionally diagnosed Appellant with

4

anti-social personality disorder. Id. At the hearing, Appellant waived his right to an SVP hearing, and this Court found that Appellant met the criteria to be classified as an SVP. Id. at 7-8.

During the testimony of the victim regarding the impact of the crime charged in Criminal Information No. 4738-2016, Appellant interrupted the testimony and expressed his desire to withdraw his guilty plea to that offense. Id. at 17-20. Appellant, however, noted that he would not be withdrawing his plea to Criminal Information No. 5790-2016, as evidenced by the following exchange:

THE COURT: We're going to take a recess. You need to talk to your lawyer about how you wish to proceed. You know, if you're telling me that you didn't do this --

THE DEFENDANT: No, I never done -- that's horrible.

THE COURT: All right.

THE DEFENDANT: She's making me seem like --

THE COURT: Sir, I can't have you calling out in the courtroom. We are going to take a recess. Take him back into the holding cell so he can talk privately with his lawyer, and we'll come back.

THE DEFENDANT: That's horrible.

TIPSTAFF: Court is in recess.

THE DEFENDANT: What she described is not me.

THE COURT: I need to know whether it's both of the cases --

MR. ERIKSEN: No, Mr. Ramos, as far as the Planet Fitness case goes --

THE DEFENDANT: Planet Fitness, yes, I was -- I know -- I don't know what happened.

THE COURT: All right.

THE DEFENDANT: *I'm pleading guilty to that.*

THE COURT: All right. Go talk to him about the other one.

5

Id. (emphasis added). Following a recess, Appellant's counsel confirmed that, while Appellant was "insistent that he wants to withdraw his plea [on Criminal Information No. 4738-2016]," he was prepared for sentencing on Criminal Information No. 5790-2016. Id. at 21. Appellant himself reiterated his desire to plead guilty during direct examination by defense counsel. Id. at 23. We subsequently allowed Appellant to withdraw his guilty plea to Criminal Information No. 4738-2016. See Order Granting Motion to Withdraw Guilty Plea.

Additionally, this Court heard testimony from Appellant, who apologized to the victim and described his past struggles with drug addiction and criminal behavior that began after the death of his one-year-old son in 1987 or 1988. Id. at 24-26. Despite his expressed frustration with "not knowing" what happened during the prior proceeding, Appellant again admitted his responsibility for the crime:

> And I am so sorry to the victim. I wish she was here. I'm really, really sorry. I am responsible for that because as the DNA shows I'm responsible, and when they showed me, the detectives showed me that the DNA was mine, so I am—I want to take responsibility for that because my DNA would have never been in that place when this happened if I was not there.

Id. at 24.

Following testimony, we sentenced Appellant as follows: ten to 20 years' incarceration on Count 2, Aggravated Assault Causing Serious Bodily Injury; two and one-half to five years' incarceration on Count 6, Possession of an Instrument of Crime; two and one-half to five years' incarceration on Count 9, Indecent Assault by Forcible Compulsion; and two and one-half to five years' incarceration on Count 11, Terroristic Threats. Id. at 33. We ordered that the above sentences run consecutively with one-another, resulting in an aggregate sentence of seventeen and one-half to 35 years' incarceration. We imposed no further penalty for Counts 3 and 10, and granted the Commonwealth's request to nol pros Counts 1, 4, 5, 7 and 8. Id. at 33-34.

6

In sentencing Appellant, we departed from the above-referenced sentencing guidelines due to the gravity of the offense, its effect on the victim, the need for community protection, and the Appellant's rehabilitative needs. We considered Appellant's "history not only of convictions but of violence" and the fact that Appellant served state sentences and had opportunities for treatment. Id. at 32. Regarding the nature of the offense, we considered that the victim was "not only physically assaulted, these were knife blows to the head. In addition to that there were multiple verbal—violent, verbal threats. And furthermore she was sexually assaulted." Id. We summarized Appellant's crimes and our reasoning as follows:

> This is a violent and cruel episode, and that anything less than a significant sentence, given the fact that the defendant has already served lengthy sentences, will not only fail to protect the community, but it will not address the rehabilitative needs of the defendant, as identified in the assessment, meaning the diagnoses of anti-social traits—personality.

Id. at 32-33. Further, we considered the Appellant's age and the impact that his son's death had on his life. Id. at 31. Finally, in discussing the SOAB report, we specified that we would consider the report in imposing sentence, but would specifically disregard any allegations in the report that did not amount to a conviction. Id. at 8-9, 32.

On July 23, 2017, Appellant filed a Post Trial Motion for reconsideration of Sentence. On September 11, 2017, this Court held a hearing and denied Appellant's Motion.

## III.    MATTERS COMPLAINED OF ON APPEAL

On September 29, 2017, Appellant filed a timely Notice of Appeal to the Superior Court and a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), which raised the following issues, *verbatim*:

1. Whether the Defendant's guilty plea on March 6, 2017 and June 13, 2017 was knowing, intelligent and voluntary.

2. Whether the trial court abused its discretion in sentencing the Defendant to a sentence of NLT 17 ½ years to NMT 35 years, which exceeded the standard and aggravated guideline ranges.

7

On November 14, 2017, Appellant filed an Amended Statement of Matters Complained of on Appeal, which raised the following third issue in a New Matter, *verbatim:*

3. Whether Defendant's Sexual Violent Predator (SVP) designation, evidentiary hearing, and registration requirements as provided under 42 PaCSA 9799 are unconstitutional under the US and Pennsylvania constitution, pursuant to Commonwealth v. Butler, 2017 PaSuper 344 (October 31, 2017) and Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017)?

Further, Appellant footnoted the third issue on appeal in his Amended Statement as follows:

A challenge to the legality of a particular sentence may be reviewed by any court on direct appeal; it need not be preserved in the lower court to be reviewable and may even be raised by an appellate court sua sponte. Commonwealth v. Batts, 163 A.2d 410, 434 (Pa. 2017).

## IV.   ANALYSIS

Appellant argues that his guilty plea was not knowingly, voluntarily, and intelligently given, and that this Court abused its discretion in sentencing Appellant to an excessive sentence outside the guideline range. Appellant additionally argues that his SVP designation and registration requirements under SORNA are unconstitutional. As an initial matter, we concede that Appellant's SVP designation and reporting requirements are unconstitutional pursuant to the Superior Court's holding in Commonwealth v. Butler, __ A.3d __, No. 1225 WDA 2016 (Pa. Super. October 31, 2017). Consequently, we believe that this Court's finding that Appellant met the criteria to be designated an SVP should be reversed and remanded for the sole purpose of issuing an appropriate notice under 42 Pa.C.S. § 9799.23 as to Appellant's registration obligation of 25 years.[10] Appellant's remaining claims, as outlined in the Amended Statement of Matters Complained of on Appeal, are addressed below.

---

[10] Appellant's guilty plea to Counts 9 and 10, both Tier II sexual offenses under SORNA, subjects him to a 25-year registration period. See 42 Pa.C.S. § 9799.14(c)(1.3); see also 42 Pa.C.S. § 9799.15(a)(2). We also note that despite having pled guilty to two Tier II sexual offenses, Appellant is not subject to lifetime registration pursuant to 42 Pa.C.S. § 9799.14(d)(16) because his convictions stems from the same criminal act. See Commonwealth v. Lutz-

## A. Guilty Plea

Appellant argues that his guilty plea was not knowingly, voluntarily, and intelligently given. We find that Appellant, through his responses to numerous written and oral colloquies in two proceedings, fully understood the nature and consequences of his plea, and that Appellant did so knowingly, voluntarily and intelligently.

A valid guilty plea must be knowingly, voluntarily, and intelligently entered. Commonwealth v. Pollard, 832 A.2d 517, 522 (Pa. Super. Ct. 2003) (citation omitted). The law does not require a defendant to be pleased with the outcome of the decision to plead guilty; all that is required is that the defendant's decision be knowingly, voluntarily, and intelligently made. Commonwealth v. Moser, 921 A.2d 526, 528-29 (Pa. Super. Ct. 2007) (citation omitted). The determination of whether a defendant understood his plea and its consequences is examined by considering the totality of the circumstances surrounding the entry of the plea. Id. at 529. Once a plea has been entered, it is presumed that a defendant knew what he was doing, and the burden of proving involuntariness is upon the defendant. Id.

Before accepting a guilty plea, the Pennsylvania Rules of Criminal Procedure require judges to elicit certain aspects of information. The colloquy must inquire into the following areas: (1) the nature of the charges; (2) the factual basis for the plea; (3) the right to a trial by jury; (4) the presumption of innocence; (5) the permissible range of sentences; and (6) the judge's authority to depart from any recommended sentence. Pa. R. Crim. P. 590.

Here, this Court conducted a full and complete colloquy on the first five above-listed areas and asked additional questions to ensure that Appellant was aware of his rights. In response to all questions posed to him, Appellant stated that he understood what was being

Morrison, 143 A.3d 891 (Pa. 2016) ("[SORNA] requires an act, a conviction, and a subsequent act to trigger lifetime registration for multiple offenses otherwise subject to a fifteen-or twenty-five-year period of registration.").

explained to him, that he was not taking medications of any kind, and that he was not otherwise under the influence of any drugs or alcohol. N.T. 3/6/17 pp. 10, 13, 19-25, 27-30, 37-43. Appellant admitted that he was responsible for the crime and did not contest the Commonwealth's presentation of the factual basis for the plea. Id. at 30-34; N.T. 6/13/17, p. 24. When we asked Appellant if there was anything he wished to correct or add to the Commonwealth's recitation of the facts, he declined and stated that he had previously discussed the facts with counsel. N.T. 3/6/17, pp. 31-32.

Further, this Court recessed twice—once during the guilty plea colloquy, and again during sentencing—to give Appellant time to review the evidence with counsel and ask any questions he may have had. In both instances, Appellant affirmed that he had time to discuss the evidence with his attorney, that he was satisfied with his representation, and that he intended to proceed with his plea. N.T. 3/6/17, pp. at 8, 16, 18-19.; N.T. 6/13/17, pp. 6, 19-21. Appellant had ample opportunity throughout both proceedings to ask additional questions, contest the factual basis for the plea, or withdraw the plea entirely. Indeed, Appellant's statements regarding Criminal Information No. 4738-2016 demonstrate that he had a full understanding of the nature and consequences of his plea. N.T. 6/13/17, pp. 17-20. Appellant's expression of a desire to withdraw that plea shows that he was an active participant in the proceedings such that he could have asked additional questions, corrected erroneous statements, or moved to withdraw his plea in Criminal Information No. 5790 if necessary.

All of these facts taken together, under the totality of the circumstances, suggest that Appellant was well aware of the nature and consequences of a guilty plea. Accordingly, this Court properly accepted Appellant's guilty plea as knowingly, voluntarily, and intelligently made.

## B. Sentencing

Appellant argues that this court abused its discretion and improperly imposed a sentence in excess of the guideline range. We find that this Court, in sentencing Appellant outside of the sentencing guidelines, properly relied on permissible factors and issued a sentence well within its discretion.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa. Super. Ct. 2006) (citation omitted). To establish an abuse of discretion, an appellant must show, by reference to the record, "that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision." Id.

When imposing a sentence, the sentencing court must consider the following factors: (1) protection of the public, (2) gravity of offense in relation to impact on victim and community, (3) rehabilitative needs of the defendant, and (4) sentencing guidelines. 42 Pa. Cons. Stat. Ann. § 9721(b) (West 2016). The sentencing court "has wide discretion in sentencing and [may], on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." Commonwealth v. Stewart, 867 A.2d 589, 593 (Pa. Super. Ct. 2005) (citation omitted). "[T]he sentencing court may deviate from the guidelines . . . to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community . . . ." Commonwealth v. Warren, 84 A.3d 1092, 1097 (Pa. Super. Ct. 2014) (citation omitted). When sentencing a defendant outside of the sentencing guidelines, the sentencing court "must state its reasons for departing from the guidelines on the record." Id. The sentencing court's reasoning must include "the factual basis and specific reasons which

11

compelled [deviation] from the guideline range." Commonwealth v. Bowen, 55 A.3d 1254, 1264 (Pa. Super. Ct. 2012) (citation omitted).

Here, this Court thoroughly explained its reasoning to Appellant for departing from the sentencing guidelines and provided a specific, factual basis on the record. We found that departing from the guidelines was appropriate because of the nature of the offense, its effect on the victim, the need for community protection, and the Appellant's rehabilitative needs. Id. at 32-33. We appropriately imposed consecutive sentences to reflect the gravity of Appellant's three distinct criminal acts—Appellant physically assaulted the victim and injured her with a knife, sexually assaulted her while holding that knife to her throat, and verbally threatened to kill her multiple times when she screamed and resisted. N.T. 3/6/17, pp. 30-34.

We recognized Appellant's acceptance of responsibility, expression of remorse, his history of drug addiction, and the he suffered "the most difficult loss a parent can suffer" when he lost his son. N.T. 6/13/17, p. at 31. However, these facts do not outweigh the gravity of Appellant's behavior, its effect on the victim, and his substantial criminal history. We further considered that a lengthy sentence was necessary for Appellant's rehabilitative needs, especially in light of the SOAB report which diagnosed Appellant with anti-social personality disorder. Id. at 4. Specifically, we did not consider the designation given by the SOAB evaluator as a factor in imposing sentence, but we did consider the diagnosis given and the information provided. Further, we specifically noted that we would disregard any allegations in the report that did not amount to a conviction. Id. at 32. As we stated at sentencing, only a significant sentence would address the gravity of this "cruel and violent episode," the protection of the community, and the Appellant's rehabilitative needs. Id. at 32-33. Finally, we note that this Court could have sentenced Appellant to consecutive periods of incarceration on Counts 2 and 3, as those offenses

12

did not merge for sentencing purposes, resulting in a longer period of incarceration.[11] Instead, we imposed no further penalty on Count 3. Id. at 33-34.

Consequently, this Court reached a sentencing decision well within its discretion. We determined that the nature of the offense, its impact on the victim, the need for community protection, and the Appellant's rehabilitative needs required a deviation from the sentencing guidelines. Our reasoning appeared on the record and was clearly communicated to Appellant. Therefore, Appellant's argument fails, as this Court did not abuse its discretion in imposing sentence.

## V. CONCLUSION

For the foregoing reasons, we respectfully submit that this Court should reverse and remand for the sole purpose of issuing an appropriate notice under 42 Pa.C.S. § 9799.23 as to Appellant's registration obligation. In all other respects, we respectfully submit that Appellant's arguments are without merit.

DATE:                                    BY THE COURT:

                                         REA B. BOYLAN, J.

---

[11] 18 Pa.C.S. § 2702(a)(4) requires that an assault be caused or attempted "with a deadly weapon," an element not contained in § 2702(a)(1). See Commonwealth v. Rhodes, 8 A.3d 912 (Pa. Super. Ct. 2010) (citing 42 Pa.C.S. § 9765).

13